896 F.2d 495
 1990 A.M.C. 1507
 Stephen J. MOREWITZ, as Administrator of the estates of
Christos Passalis, Constantinos Stamatis, Gerassimos
Markatos, Georg Marangos, Jesus Ramos Mayorquin, Efran
Alvarado Martinez, and Mukhtar Ahmed, Deceased, Plaintiff-Appellant,
v.
THE WEST OF ENGLAND SHIP OWNERS MUTUAL PROTECTION AND
INDEMNITY ASSOCIATION (LUXEMBOURG), Defendant-Appellee.
 No. 88-7497.
 United States Court of Appeals,
Eleventh Circuit.
 March 13, 1990.
 
 Ross Diamond, III, Diamond, Leon & Barter, Mobile, Ala., for plaintiff-appellant.
 Joseph M. Allen, Jr., Gregory C. Buffalow, Johnstone, Adams, Bailey, Gordon, & Harris, Mobile, Ala., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Alabama.
 Before TJOFLAT, Chief Judge, JOHNSON, Circuit Judge, and ESCHBACH*, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge:
 
 
 1
 Plaintiff-Appellant, Stephen J. Morewitz, administrator of the estates of several deceased seamen, filed this action in federal district court seeking to recover on a marine protection and indemnity policy issued by the defendant-appellee, The West of England Ship Owners Mutual Protection and Indemnity Association ("West of England"), a Luxembourg corporation. The deceased seamen, all foreign nationals, were crew members of the M/V IMBROS which sank in international waters off Bermuda in December 1975, and which was covered at the time of its sinking by an insurance policy issued by West of England. West of England is a mutual insurance association engaged in the business of providing marine protection and indemnity insurance to owners and operators of vessels. The district court dismissed this action, without prejudice, for lack of subject matter jurisdiction. The court held that this was not a suit on a marine insurance contract, but rather an action based on a British bankruptcy statute. Plaintiff then filed a motion for reconsideration of the dismissal order, which the court denied.
 
 
 2
 From the denial of his motion for reconsideration and the court's dismissal of this action, the administrator now appeals. First, he argues that the court had subject matter jurisdiction of this action because this is a suit to execute a judgment rendered in the District Court for the Eastern District of Virginia, which he registered in the Southern District of Alabama under 28 U.S.C. Sec. 1963. Second, appellant contends that the court had subject matter jurisdiction because this is a suit on a marine insurance contract, which falls under our federal admiralty jurisdiction. Finally, appellant asserts that the court erred in deciding a factual issue without hearing evidence on the merits. For the reasons stated below, we reverse the district court's dismissal of the action for lack of subject matter jurisdiction because we disagree with its determination that this is not a suit on a marine insurance contract.
 
 I.
 
 3
 This action arises out of the sinking of the M/V IMBROS, with the death of all crew members, somewhere off Bermuda in December 1975. Carrying a cargo of railroad ties, the ship was en route from Mobile, Alabama to Port Cartier, Quebec, Canada. Morewitz, the appointed administrator of the estates of the deceased crewmen, brought a wrongful death action against the vessel owner of record, Imbros Shipping Company, Limited ("Imbros Shipping"), a Cypriot corporation, and against the vessel's managing agent, General Development & Shipping Enterprises Company, Limited ("General Development"), a Cypriot corporation, in the United States District Court for the Eastern District of Virginia. The court dismissed Imbros Shipping as a party to the suit prior to trial for lack of personal jurisdiction. The court, however, determined that it had personal jurisdiction over General Development. Since General Development had failed to respond to the court's discovery orders, the court, pursuant to Rule 37(d) of the Federal Rules of Civil Procedure, found it to be the owner pro hac vice of the ship at the time of the loss. The court then determined that General Development was liable for the deaths of the ship's crew members. On April 3, 1980, the court entered a judgment against General Development for damages in the amount of $459,456.36. General Development appealed, and the Fourth Circuit Court of Appeals affirmed the judgment. 660 F.2d 491 (4th Cir.1981). Subsequently, General Development became insolvent, and the judgment remains unpaid.
 
 
 4
 On June 26, 1985, plaintiff filed this suit in federal district court against West of England seeking both to recover proceeds under a marine insurance policy that West of England had issued and to enforce the judgment entered by the United States District Court for the Eastern District of Virginia which was registered in the Southern District of Alabama under 28 U.S.C. Sec. 1963. In 1975, West of England had issued a marine protection and indemnity policy covering the M/V IMBROS. The policy was in full force and effect at the time of the vessel's sinking in December 1975.
 
 
 5
 On August 28, 1985, West of England filed a motion to dismiss on several grounds, including that the court lacked subject matter jurisdiction over plaintiff's complaint. The court denied this motion. Apparently, the defendant filed another motion to dismiss or orally revived its earlier motion because the court held a hearing on the motion to dismiss on February 21, 1986.[1] Shortly thereafter, Morewitz registered a certified copy of the judgment entered by the United States District Court for the Eastern District of Virginia in the District Court for the Southern District of Alabama. In addition to filing a brief in opposition to defendant's motion to dismiss, on March 28, 1986, Morewitz filed an amended complaint.
 
 
 6
 In his amended complaint, Morewitz alleges that this is an action on a marine insurance contract, which falls under the federal admiralty and maritime jurisdiction pursuant to 28 U.S.C. Sec. 1333. He further alleges that General Development procured the certificate of insurance from defendant to insure "against losses which might be sustained by reason of claims and judgments for personal injuries and death occurring aboard" the M/V IMBROS. Plaintiff's Amended Complaint, Rec. 25, at 4. The defendant then refiled its motion to dismiss, on April 3, 1986, arguing that the court lacked subject matter jurisdiction over the action.
 
 
 7
 On May 19, 1988, the district court held a hearing on defendant's motion to dismiss the action. Subsequently, on June 29, 1988, the court dismissed, without prejudice, this action pursuant to Federal Rule of Civil Procedure 12(b)(1). First, the court held that rather than being an action on a marine insurance contract, this suit is based on a British bankruptcy statute. Second, the court ruled that jurisdiction did not exist pursuant to 28 U.S.C. Sec. 1963 because plaintiff is seeking to assert a new cause of action against an entity that was not a party to the action in the Virginia suit. Plaintiff then filed a motion for reconsideration of the court's order dismissing the action for lack of subject matter jurisdiction, which the court denied on July 7, 1988.
 
 II.
 
 8
 Morewitz now appeals from the district court's dismissal of this action for lack of subject matter jurisdiction. He contends that the district court had subject matter jurisdiction over this dispute because this is a suit on a marine insurance policy which falls under our federal admiralty jurisdiction pursuant to 28 U.S.C. Sec. 1333.[2] He concedes that the deceased seamen were not named insureds under the insurance policy, but argues that this fact is irrelevant for purposes of determining subject matter jurisdiction. In rebuttal, West of England asserts that this fact is relevant. According to West of England the deceased seamen were neither parties to the insurance contract nor third party beneficiaries of it and, therefore, invocation of admiralty jurisdiction on the basis that the suit is one on a marine insurance contract is improper. The deceased seamen are allegedly suing under rights created by an English bankruptcy statute, The Third Parties (Rights Against Insurers) Act of 1930.[3] Thus, argues West of England, this case involves something other than admiralty.
 
 
 9
 In its order dismissing this action, the court concluded that the basis of the plaintiff's complaint was the English statute. The court noted that the plaintiff alleged in his complaint that English law governs this dispute, and that he attached a copy of the text of the English statute to the complaint. The court quoted from a portion of the plaintiff's complaint in which he alleged that because a receiver had been appointed over General Development's assets in Cyprus, "its rights to indemnity under the said contract of insurance with the Defendant have become vested in the Plaintiff, who now has standing to sue the Defendant under the above-mentioned provisions of said statute." Plaintiff's Amended Complaint, Rec. 25, at 7. From this, the court concluded that "it is clear that the plaintiff's action is based on a British bankruptcy statute which is not maritime in nature." District Court's Order, Rec. 35, at 5. Although the court did not detail its reasoning, it seems that it felt it was faced with an either/or decision--either this action concerns foreign bankruptcy or this action concerns admiralty--and made its decision in favor of bankruptcy.
 
 
 10
 The lower court erred in both the characterization and resolution of its decision. Morewitz alleges, in his amended complaint, that he is seeking to recover on a marine protection and indemnity policy which West of England issued on the M/V IMBROS. Plaintiff's Amended Complaint, Rec. 25, at 1, 4. This is enough to confer subject matter jurisdiction, for it is well settled that a suit on a contract of marine insurance falls within our federal admiralty jurisdiction. Kossick v. United Fruit Co., 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961); Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 313, 75 S.Ct. 368, 370, 99 L.Ed. 337 (1955); Insurance Co. v. Dunham, 78 U.S. (11 Wall.) 1, 35-36, 20 L.Ed. 90 (1870). The English statute is of no import here; subject matter jurisdiction exists with or without it.
 
 
 11
 This is so because the English statute concerns standing to sue, not subject matter jurisdiction. The statute is not a "bankruptcy statute" but a common direct action statute. Direct action statutes generally have nothing to do with subject matter jurisdiction; they are " 'remedial in character, rather than substantive.' " Olympic Towing Corp. v. Nebel Towing Co., 419 F.2d 230, 241 (5th Cir.1969), denying petition for reh'g and reh'g en banc of 419 F.2d 230 (Brown, C.J., dissenting from denial of rehearing) (quoting Finn v. Employers' Liability Assurance Corp., 141 So.2d 852, 864 (La.Ct.App.1962)). They do not create any liabilities or causes of action, they merely give a group of persons--those whose possible injury was the risk insured by the contract--direct standing to sue an insurer by putting them "in the shoes" of the assured. See id.; Tokio Marine & Fire Ins. Co. v. Aetna Casualty Co., 322 F.2d 113, 116-17 & n. 8 (5th Cir.1963); Degelos v. Fidelity & Casualty Co., 313 F.2d 809, 815 (5th Cir.1963). See also Crown Zellerbach Corp. v. Ingram Indus., Inc., 783 F.2d 1296, 1299, 1301 (5th Cir.) (en banc) (overruling in the Fifth Circuit on grounds not relevant here Olympic Towing Corp. v. Nebel Towing Co., 419 F.2d 230 (5th Cir.1969)), cert. denied, 479 U.S. 821, 107 S.Ct. 87, 93 L.Ed.2d 40 (1986). The insurer's liability remains the same (that which it had under the contract), only now it has to pay the injured persons, not the assured.[4] Here, the English statute gives direct action litigation rights to the plaintiff, but it does not change the subject matter--marine insurance--upon which his suit is based.
 
 
 12
 Because the standing question is separate and distinct from the subject matter question, there is no "either/or" decision to make. The plaintiff has standing to sue by virtue of the English statute,[5] so in one sense (the standing sense) the basis of his case is that statute. Yet the subject matter of the suit is liability under a marine insurance policy, so the basis of his case also is admiralty subject matter. See e.g., Maryland Casualty Co. v. Cushing, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954); Steelmet, Inc. v. Caribe Towing Corp., 779 F.2d 1485 (11th Cir.1986), modifying 747 F.2d 689 (1984); Olympic Towing Corp. v. Nebel Towing Co., 419 F.2d 230 (11th Cir.1969), cert. denied, 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970); Aetna Casualty, supra; Fidelity & Casualty, supra. See also Ingram Indus., supra. As this is so, the district court erred in dismissing plaintiff's case for lack of subject matter jurisdiction.[6]
 
 III.
 
 13
 For all the foregoing reasons, the district court's judgment is REVERSED and the case is REMANDED for further proceedings.
 
 TJOFLAT, Chief Judge, concurring:
 
 14
 I concur in the result reached by the majority but write separately because I am concerned with its discussion of "standing to sue."
 
 
 15
 As a suit on a contract of marine insurance, this case falls within the federal courts' admiralty jurisdiction. See Insurance Co. v. Dunham, 78 U.S. (11 Wall.) 1, 35-36, 20 L.Ed. 90 (1870). The district court improperly characterizes the role in this suit of a British bankruptcy statute that provides a third party with a direct action against an insurer when the insured has become insolvent. The district court correctly concludes that the plaintiff's cause of action here depends upon that statute: without it, the plaintiff could bring no direct action against the insurer. The district court, however, incorrectly concludes that the cause of action depends solely upon the statute. The action also depends upon the underlying contract of marine insurance: the British statute alone would give the plaintiff no cause of action. Because the suit is based in part on this insurance contract, it falls within the federal courts' admiralty jurisdiction.
 
 
 16
 The majority is confused about whether this statute provides a basis for the plaintiff's cause of action. The majority states that the statute "concerns standing to sue," but that such statutes "do not create any liabilities or causes of action." Ante at 499. A few sentences later, however, the majority concludes that "the English statute gives direct action litigation rights to the plaintiff." Id. The term "litigation rights" must surely mean a right, or cause, of action.
 
 
 17
 The majority's confusion seems to result from its attempt to analogize this British statute to a Louisiana direct action statute, La.Rev.Stat.Ann. Sec. 22:655 (West 1988 & Supp.1989). The Louisiana statute mandates that every liability insurance contract issued in Louisiana contain a direct action provision for third parties against an insurer if an insured becomes insolvent. See id. If the British statute involved here operated in this manner, then the majority would be correct in asserting that the British statute creates no "liabilities or causes of action," ante at 499. The British statute, however, operates differently. Rather than mandating a direct action provision in every insurance contract, the statute itself provides the right of action: the insured's "rights against the insurer under the contract in respect of the liability shall ... be transferred to and vest in the third party to whom the liability was so incurred." The Third Parties (Rights Against Insurers) Act, 1930, 20 & 21 Geo. 5, ch. 25, Sec. 1(1). This statute thus "vests" a substantive right in the third party--a right that is, of course, equivalent to the insured's rights under the contract.
 
 
 18
 In short, the plaintiff's right of action in this case depends on both the insurance contract and the statute. This action (because it depends in part on the insurance contract) falls under federal admiralty jurisdiction; I therefore concur in the result reached by the majority.
 
 
 
 *
 The Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 Neither the record nor the docket sheet contains any reference to the filing of a second motion to dismiss. Based on the memoranda submitted in support of it and the transcript from the district court's hearing on the issue, we presume that the grounds alleged in the second motion to dismiss were the same as those asserted in the first motion to dismiss
 
 
 [2]
 The statute, in relevant part, provides, "The district courts shall have original jurisdiction, exclusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. Sec. 1333(1)
 
 
 [3]
 Section one of this Act provides:
 
 
 [1]
 Rights of third parties against insurers on bankruptcy, etc., of the insured
 (1) Where under any contract of insurance a person (hereinafter referred to as the insured) is insured against liabilities to third parties which he may incur, then--
 (a) in the event of the insured becoming bankrupt or making a composition or arrangement with his creditors; or
 (b) in the case of the insured being a company, in the event of a winding-up order being made, or a resolution for a voluntary winding-up being passed, with respect to the company, or of a receiver or manager of the company's business or undertaking being duly appointed, or of possession being taken, by or on behalf of the holders of any debentures secured by a floating charge, of any property comprised in or subject to the charge;
 if, either before or after that event, any such liability as aforesaid is incurred by the insured, his rights against the insurer under the contract in respect of the liability shall, notwithstanding anything in any Act or rule of law to the contrary, be transferred to and vest in the third party to whom the liability was so incurred.
 Plaintiff's Amended Complaint, Rec. 25, at 23.
 
 
 [4]
 It does no good to argue that the insurer's liability is changed because under the terms of an insurance policy it is obligated to pay only after the assured has paid (an indemnity contract) whereas under the statute it must pay even though the assured has not. Such "no action" terms are generally voided by direct action statutes; it is as if they never existed. Nebel Towing Co., 419 F.2d 238, 241 (Brown, C.J., dissenting denial of rehearing). This seems to be the result of the English statute. Such a result occurs because "[t]he direct action statute becomes a part of every insurance policy having effect [in the forum] as though written into the policy." Nebel Towing Co., 419 F.2d 230, 237 (discussing the Louisiana direct action statute). See also Nebel Towing Co., 419 F.2d 230, 241 (" 'No Action' clauses are ineffectual.") (Brown, C.J., dissenting). Because direct action statutes are "part" of the insurance policy, then liability under that policy is not changed by the statutes
 
 
 [5]
 We assume this to be the case for purposes of our subject matter jurisdiction discussion. Plaintiff alleged in his complaint that "[p]ursuant to the published rules of the Defendant ... which form a part of the [marine insurance contract], English law governs any and all disputes between the Defendant and those claiming under or by virtue of contracts of insurance issued by the Defendant." Plaintiff's Amended Complaint, Rec. 25, at 6. He then took this to mean that the English direct action statute, as English law, was applicable. Id. at 7. The defendant concedes in its brief that "the contract identifies English law as the governing law," Defendant's Reply Brief at 12, and also that the English direct action statute is applicable. Id. at 17-19. Because both parties seem intent on letting the English statute apply, we deem it to apply for the purposes of this appeal
 But we are not so sure that an extended inquiry into choice of law rules would show that the English statute is applicable. Although it seems clear that English law would govern in construing the existence and amount of defendant's liability under the marine insurance contract, it is not as clear, when the suit is being brought in Alabama, that English procedural law would apply. The cases we have reviewed, although not addressing the choice of law issue directly, indicate that the forum state's law may be the applicable law for purposes of applying any direct action statute. See e.g., Maryland Casualty Co. v. Cushing, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954); Steelmet, Inc. v. Caribe Towing Corp., 779 F.2d 1485 (11th Cir.1986), modifying 747 F.2d 689 (1984); Nebel Towing, 419 F.2d 230; Aetna Casualty, supra; Fidelity & Casualty, supra; Ingram Indus., supra, at 1301 (quoting Burke v. Massachusetts Bonding & Ins. Co., 209 La. 495, 24 So.2d 875 (1946)). See also Wilson Boat, supra (discussing marine insurance in general); Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co., 757 F.2d 1172, 1174 (11th Cir.1985) (same).
 Thus, the choice of law question could conceivably affect plaintiff's standing, and, consequently, the Court's Article III power to decide the case. See U.S. Const. art. III, Sec. 2. We need not concern ourselves with it now, however, as plaintiff has also alleged that he has standing under Alabama law should it apply, see Plaintiff's Amended Complaint, Rec. 25, at 28 (referring to Ala.Code Secs. 27-23-1 to -2), and as defendant has not seen fit to argue otherwise.
 
 
 [6]
 This disposes of the question on subject matter jurisdiction. Thus, we need not and do not address Morewitz's argument that the district court had subject matter jurisdiction over his case due to 28 U.S.C. Sec. 1963
 Morewitz also argues that the court erred in deciding a factual issue without hearing evidence on the merits. In a footnote in its order, the district court suggested that General Development may not be a named insured in the marine insurance policy covering the M/V IMBROS. But we need not and do not address this issue either. First, such a "finding" is of no consequence in relation to the procedural posture of the district court's order, which ruled on defendant's Fed.R.Civ.P. 12(b)(1) & (2) motion to dismiss. Second, the record before the Court is devoid of evidence regarding the issue. We simply could not resolve it on the record before us.
 On remand, and after receiving more evidence, the lower court may try again.