United States Court of Appeals,

Eleventh Circuit.

No. 94-6650.

Stephen J. MOREWITZ, as Administrator of the Estates of Chrisos Passalis; Constantinos Stamatis; Gerassimos Markatos; George Marangos; Jesus Ramos Mayorquin; Efran Alvarado Martinez; and Mukhtar Ahmed, deceased, Plaintiffs-Appellants,

v.

The WEST OF ENGLAND SHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION (LUXEMBOURG), Defendant-Appellee.

Sept. 6, 1995.

Appeal from the United States District Court for the Southern District of Alabama. (No. 85-0855-T-C), Daniel Holcombe Thomas, Judge.

Before CARNES and BARKETT, Circuit Judges, and GIBSON[*], Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge:

Stephen Morewitz,[1] as administrator for the estates of several of the crew members who were aboard the M/V IMBROS when it disappeared at sea, brought wrongful death actions against the vessel's owner and managing agent in the United States District Court for the Eastern District of Virginia. After obtaining a favorable judgment, Morewitz brought this action in the United States District Court for the Southern District of Alabama, seeking to enforce the judgment and recover on a marine protection and indemnity policy issued by West of England Ship Owners Mutual Protection and Indemnity Association ("West of England").

---

[*]Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

[1]Stephen Morewitz succeeded Ruth Morewitz as the administrator for these estates.

The district court dismissed Morewitz's lawsuit for lack of subject matter jurisdiction, concluding that this action was not based on a marine insurance contract, but rather, on English bankruptcy statutes. We reversed and held that this case fell within the federal court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.[2] *Morewitz v. The West of Eng. Ship Owners Mut. Protection and Indemnity Ass'n (Lux.),* 896 F.2d 495, 496 (11th Cir.1990) ("*Morewitz I* ").

On remand, the district court granted West of England's motion to stay the proceedings pending arbitration. Morewitz appealed, and we dismissed for lack of jurisdiction because the district court's order was interlocutory and not subject to appeal. *Morewitz v. The West of Eng. Ship Owners Mut. Protection and Indemnity Ass'n (Lux.),* 5 F.3d 1498 (11th Cir.1993) (unpublished) ("*Morewitz II* ").

On remand again, Morewitz argued that the deceased crew members were not bound by the arbitration agreement and, alternatively, that West of England had waived its right to compel arbitration. Unpersuaded by Morewitz's arguments, the district court ordered that the parties had six months in which to demonstrate that they were proceeding with arbitration. Morewitz requested that the district court reconsider its stay order or certify the question for immediate appeal. The district court denied both of these motions. As a result of Morewitz's continued

---

[2]"The district courts shall have original jurisdiction, exclusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1) (1988).

refusal to comply with the arbitration order, the district court dismissed this case with prejudice for want of prosecution.

Upon Morewitz's third appeal to this Court, the issues before us are whether the district court erred in ordering arbitration, and, if so, whether it was an abuse of discretion to dismiss Morewitz's case with prejudice for failure to comply with the arbitration order. Because we conclude that the district court erred in compelling arbitration, we VACATE the district court's order dismissing this action and REMAND for further proceedings consistent with this opinion.

I. BACKGROUND

A. Facts

On December 13, 1975, the M/V IMBROS loaded with cargo in Mobile, Alabama, and departed for Quebec, Canada. Three days into its voyage, the crew notified the vessel's managing agent about leakage in the salt water cooling system for the main engine gears. On December 18, the crew broadcast an SOS or "Mayday message" from international waters in the region known as the Bermuda Triangle. The M/V IMBROS disappeared at sea, and no trace of the ship, its cargo, or its eighteen crew members was ever found.

The M/V IMBROS was registered to Imbros Shipping Company, Limited, ("Imbros Shipping") and managed by General Development & Shipping Enterprises Company, Limited, ("General Development"). Both Imbros Shipping and General Development were Cypriot corporations owned by George Tsourinakis and his wife. West of England had issued a marine protection and indemnity policy covering the M/V IMBROS, which was in force and effect at the time

of the vessel's disappearance.

As part of the risks insured against, the West of England policy provided compensation for the loss of life of any person on board an insured vessel. Furthermore, according to Rule 64 of the West of England Ship Owners Mutual Protection and Indemnity Association:

> If any difference or dispute shall arise between an insured Owner ... and the Association out of or in connection with these Rules or arising out of any contract between an insured Owner and the Association or as to the rights or obligations of the Association or the insured Owner thereunder or in connection therewith or as to any other matter whatsoever, such difference or dispute shall be referred to the arbitration in London of a sole legal Arbitrator.... The obtaining of an Arbitration Award as hereinbefore provided shall be a condition precedent to the right of any insured Owner to bring or maintain any action, suit or other legal proceedings against the Association in respect of any such difference or dispute.

The record indicates that during 1976 and 1977, West of England paid settlements in Greece to the families of at least seven of the M/V IMBROS crew members. In addition, Morewitz alleged that West of England reimbursed General Development for the loss of vessel and cargo by giving the company credits against its unpaid premiums or "calls."

Between 1976 and 1978, Morewitz brought wrongful death actions on behalf of seven of the deceased crew members against Imbros Shipping and General Development. The United States District Court for the Eastern District of Virginia dismissed Imbros Shipping for lack of personal jurisdiction, but determined that it had personal jurisdiction over General Development. West of England retained counsel to defend this action both before and after the district court dismissed Imbros Shipping from the litigation.

Morewitz then argued that General Development was an alter ego for Imbros Shipping and that General Development had procured the West of England policy and was responsible for the premiums. Morewitz also claimed that, according to George Tsourinakis' deposition testimony, General Development exercised all incidents of ownership over the M/V IMBROS, effectively making General Development a "demise charter party."[3]

In attempts to establish the party responsible for the M/V IMBROS at the time of its disappearance, Morewitz submitted interrogatories to General Development, but the company refused to respond. As a sanction for General Development's failure to comply with the district court's discovery order, the court found General Development to be the owner *pro hac vice* of the M/V IMBROS at the time of the loss.[4]

The district court then determined that the M/V IMBROS was inadequately staffed and unseaworthy when it disappeared and that General Development was liable for the deaths of the vessel's crew members. On April 3, 1980, the district court entered judgment in favor of the decedents for a total of $459,456.36 in damages. General Development appealed, and the judgment was summarily

---

[3]"To create a demise the owner of the vessel must completely and exclusively relinquish "possession, command, and navigation' thereof to the demisee.... It is therefore tantamount to, though just short of, an outright transfer of ownership." *Guzman v. Pichirilo,* 369 U.S. 698, 699-700, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205 (1962) (citations omitted).

[4]"If a party ... fails ... to serve answers or objections to interrogatories ... the court in which the action is pending on motion may make such orders in regard to the failure as are just ..." including an order preventing a disobedient party from opposing a designated claim. Fed.R.Civ.P. 37(b) and (d).

affirmed by the Fourth Circuit Court of Appeals. *Morewitz v. General Dev. & Shipping Enters. Co., Ltd.,* 660 F.2d 491 (4th Cir.), *cert. denied,* 454 U.S. 939, 102 S.Ct. 474, 70 L.Ed.2d 246 (1981). At some point during the litigation in Virginia, General Development became insolvent and is now defunct. The judgment remains unpaid.

B. Procedural History

Morewitz registered the Virginia judgment in the United States District Court for the Southern District of Alabama.[5] On June 26, 1985, Morewitz filed the present lawsuit to enforce the judgment and recover proceeds under West of England's marine protection and indemnity policy that covered the M/V IMBROS at the time of its disappearance.

In the first incarnation of this litigation, Morewitz alleged that this suit was based on: (1) English bankruptcy statutes,[6] which created third party rights in favor of the decedents; and (2) a marine insurance contract, which fell within federal admiralty and maritime jurisdiction. West of England filed a motion to dismiss, arguing that the district court lacked subject matter jurisdiction.

Erroneously believing that it was constrained to characterize these proceedings either as a foreign bankruptcy or an admiralty action, the district court determined that this suit was based on

_____

[5]"A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." 28 U.S.C. § 1963 (1988).

[6]For the text of The Third Parties (Rights Against Insurers) Act of 1930, see *Morewitz I,* 896 F.2d at 498 n. 3.

the English bankruptcy statutes.  Consequently, the district court dismissed for lack of subject matter jurisdiction.  *Morewitz I,* 896 F.2d at 498.  This Court reversed, holding that "the subject matter of the suit is liability under a marine insurance policy, so the basis of [Morewitz's] case also is admiralty subject matter."  *Id.* at 500.

On remand, Morewitz abandoned his argument that the English bankruptcy statutes applied, and instead, relied solely on the Alabama direct action statutes.  Ala.Code §§ 27-23-1 and 27-23-2 (1975).  As we stated in *Morewitz I,* direct action statutes "give a group of persons—those whose possible injury was the risk insured by the contract—direct standing to sue an insurer by putting them "in the shoes' of the assured."  896 F.2d at 499.

On October 17, 1990, West of England filed a motion to stay the proceedings pending arbitration,[7] and on January 31, 1991, the district court granted West of England's motion.  Morewitz then filed a motion for reconsideration and argued that West of England had waived any right that it may have had to compel arbitration. The district court denied Morewitz's motion, concluding that West of England was not in default for failing to make a pre-litigation demand for arbitration.  After Morewitz's unsuccessful attempt to

---

[7] 9 U.S.C. § 3 (1988) provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending ... shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

appeal the district court's order and his continued refusal to arbitrate, the district court dismissed this case with prejudice for want of prosecution. Morewitz appeals.

II. DISCUSSION

A. Jurisdiction

As a threshold matter, we address West of England's argument that this Court lacks jurisdiction to consider this appeal. Citing our decision in *Morewitz II,* West of England argues that "an appeal may not be taken from an interlocutory order ... granting a stay of any action under section 3 of this title." 9 U.S.C. § 16(b)(1) (Supp. III 1991).

Pursuant to 28 U.S.C. § 1291 (1988), "[t]he court of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court." Decisions of the district court are final if they "end the litigation on the merits and leave nothing for the district court to do but execute the judgment." *Thomson McKinnon Sec., Inc. v. Salter,* 873 F.2d 1397, 1399 (11th Cir.1989) (quotation omitted). "A dismissal with prejudice clearly is a decision that ends the litigation on the merits and leaves nothing for the court to do but execute a judgment." *Nichols v. Mobile Bd. of Realtors, Inc.,* 675 F.2d 671, 673 (5th Cir. Unit B 1982) (quotations omitted).[8] We conclude that we have jurisdiction to hear this appeal.

Furthermore, we are guided by our decision in a case that was

---

[8]Former Fifth Circuit case, Public Law 96-452 § 9(1)—October 14, 1980.

presented in the same procedural posture as the case at hand. State Establishment, the owner of the cargo that was destroyed during shipping, instituted a lawsuit against the vessel, the various corporations that managed the vessel and cargo, and the defendants' liability underwriter. *State Establishment for Agric. Prod. Trading v. M/V Wesermunde,* 838 F.2d 1576 (11th Cir.), *cert. denied,* 488 U.S. 916, 109 S.Ct. 273, 102 L.Ed.2d 262 (1988).[9] Upon the defendants' motion to have the dispute referred to arbitration, the district court stayed the proceedings. *Id.* at 1579. State Establishment refused to arbitrate, and the district court dismissed the case with prejudice for failure to comply with the arbitration order. *Id.* at 1577.

Although we acknowledged the antiquated but viable admiralty law doctrine that there is no jurisdiction to hear an appeal from a district court's stay of admiralty proceedings pending arbitration, *Schoenamsgruber v. Hamburg Am. Line,* 294 U.S. 454, 457-58, 55 S.Ct. 475, 476-77, 79 L.Ed. 989 (1935), we concluded this predicament created a "Catch 22." *State Establishment,* 838 F.2d at 1579. State Establishment was being forced to expend substantial time, effort, and funds to comply with what was likely an erroneous arbitration order; yet, because of the *Schoenamsgruber* doctrine,[10] it was necessary to complete the

---

[9]The Supreme Court recently resolved a conflict between the Circuit Courts and held that foreign arbitration clauses in bills of lading are not invalid under the Carriage of Goods by Sea Act. *Vimar Seguros Y Reaseguros, S.A., v. M/V SKY REEFER,* --- U.S. ----, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995).

[10]*See Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.,* 761 F.2d 198, 202-03 (11th Cir.1985) (discussing the origins of the *Schoenamsgruber* doctrine).

arbitration process before the validity of the arbitration proceeding could be tested on appeal.

Faced with this dilemma, State Establishment, like Morewitz, believed that is was better to forego any damages it might potentially recover from the arbitration process in exchange for appealing the chance that the district court erred in ordering arbitration. *Id.* We noted, "[t]he inherent risk in taking such a position was, of course, that if the district court was correct in ordering arbitration, the dismissal with prejudice for failure to comply with that order would be affirmed by this court." *Id.* Fortunately for Morewitz, he has avoided this "inherent risk" because we disagree with the district court's order requiring the parties to arbitrate this dispute.

B. Direct Actions

1. *English Law*

On appeal, Morewitz concedes that attempting to arbitrate this dispute in England would be futile. In 1990, the House of Lords held that when the terms of an insurance policy require the insured to pay its obligation before it may collect against the insurer, the insured must pay before any other party can sue on the contract.[11] *Firma C-Trade S.A. v. Newcastle Protection and Indem. Ass'n,* 2 Lloyd's Rep. 191 (H.L.1990). "Because under English law, such payment is a "condition precedent' to a direct suit against

---

[11]According to Rule 18 of the West of England Ship Owners Mutual Protection and Indemnity Association, "it shall be a condition precedent of an insured Owner's right to recover from the funds of the Association in respect of any liabilities, costs or expenses that he shall first have discharged or paid the same."

the insurer, plaintiffs cannot proceed under English law."
*Psarinos v. Standard Marine Ltd.,* 12 F.3d 461, 464 (5th Cir.)
(footnote omitted), *cert. denied,* --- U.S. ----, 114 S.Ct. 2164,
128 L.Ed.2d 887 (1994).

2. *Alabama Statutes*

As we have noted, however, Morewitz is not seeking recourse
under the English bankruptcy law, but rather, under the Alabama
direct action statutes.[12]  The Alabama direct action statutes state
that recovery "shall not depend upon the satisfaction by the
insured of a final judgment against him for loss."  Ala.Code § 27-
23-1.

3. *The Conflict*

Federal admiralty law neither authorizes nor forecloses a

---

[12]Ala.Code §§ 27-23-1 and 27-23-2 (1975) provide:

> As to every contract of insurance made between an
> insurer and any insured by which such insured is
> insured against loss or damage on account of ... death
> by accident of any person for which loss or damage such
> insured is responsible, whenever a loss occurs on
> account of a casualty covered by such contract of
> insurance, the liability of the insurer shall become
> absolute and the payment of the loss shall not depend
> upon the satisfaction by the insured of a final
> judgment against him for loss, or damage or death
> occasioned by the casualty....

> Upon the recovery of a final judgment against any
> person, firm or corporation by any person, including
> administrators or executors, for loss or damage on
> account of bodily injury, or death ... if the defendant
> in such action was insured against the loss ... at the
> time when the right of action arose, the judgment
> creditor shall be entitled to have the insurance money
> provided for in the contract of insurance between the
> insurer and the defendant applied to the satisfaction
> of the judgment, and ... the judgment creditor may
> proceed against the defendant and the insurer to reach
> and apply the insurance money to the satisfaction of
> the judgment.

third party's right to directly sue an insurance company. *Steelmet, Inc. v. Caribe Towing Corp.,* 779 F.2d 1485, 1487 (11th Cir.1986), *modifying* 747 F.2d 689 (1984). "A state may, however, create a direct action against a maritime insurer, at least where the state action is not in conflict with any feature of substantive admiralty law or any remedy peculiar to admiralty jurisdiction." *Steelmet,* 779 F.2d at 1487; *see Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 320-21, 75 S.Ct. 368, 374, 99 L.Ed. 337 (1955) (in the absence of a controlling federal admiralty principle, state law can be applied in an admiralty case). The conflict in the present case lies not with federal admiralty law, but with whether the English bankruptcy statutes or the Alabama direct action statutes apply.

We recognize that characterizing direct action statutes as either procedural or substantive is problematic, particularly in the context of admiralty jurisdiction.[13] *See State Trading Corp. of India v. Assuranceforeningen Skuld,* 921 F.2d 409, 414-15 (2d Cir.1990). "However, in order to promote orderly administration of justice and the integrity of courts' local rules, some laws are deemed procedural and not subject to choice of law rules." *Id.* at 416; *see also* Restatement (Second) of Conflict of Laws § 122 cmt. a (1971) (discussing a state's right to apply its own procedural law). Therefore, "[b]efore engaging in choice of law analysis, we

---

[13]The Restatement (Second) of Conflict of Laws § 122 cmt. b (1971), suggests that rather than classifying issues as "procedural" or "substantive," courts should directly face whether the forum's rule should be applied. *See Schoenberg v. Exportadora de Sal, S.A. de C.V.,* 930 F.2d 777, 782 (9th Cir.1991) (noting that federal common law follows the approach of the Restatement (Second) of Conflict of Laws).

first address [the] argument that [Alabama's] direct action statute is procedural and therefore not subject to choice of law rules." *State Trading,* 921 F.2d at 414.

In *Morewitz I,* we described direct action statutes as "remedial in character, rather than substantive." 896 F.2d at 499 (quotations omitted); *see also id.* at 501 (Tjoflat, J., concurring) (distinguishing that rather than mandating a direct action provision in every insurance contract, the English bankruptcy statute itself provided the right of action). We also noted that:

> Although it seems clear that English law would govern in construing the existence and amount of defendant's liability under the marine insurance contract, it is not as clear, when the suit is being brought in Alabama, that English procedural law would apply. The cases we have reviewed, although not addressing the choice of law issue directly, indicate that the forum state's law may be the applicable law for purposes of applying any direct action statute. *See e.g., Maryland Casualty Co. v. Cushing,* 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954); *Steelmet, Inc. v. Caribe Towing Corp.,* 779 F.2d 1485 (11th Cir.1986), *modifying* 747 F.2d 689 (1984).

896 F.2d at 499 n. 5 (additional citations omitted).

Moreover, in *Macey v. Crum,* 249 Ala. 249, 30 So.2d 666 (1947), the Supreme Court of Alabama held that its direct action statute "merely enables the person suffering the initial damages, out of which grows the loss to the insured, to acquire a lien against the loss and the right to damages or indemnity arising under the policy, and to enforce it in his own name." *Id.* 30 So.2d at 668 (quotation omitted); *see also Fleming v. Pan American Fire & Cas. Co.* 495 F.2d 535, 539 (5th Cir.1974) [14] (stating that Alabama's

---

[14]Pursuant to *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206 (11th Cir.1981) (en banc), decisions of the former Fifth Circuit entered prior to the split establishing the Eleventh

direct action statutes applied in a diversity case without regard to whether the insurance contract was made in Alabama or whether the named parties to the contract of insurance were residents or nonresidents of Alabama); *but see State Trading,* 921 F.2d at 416 (concluding that the application of Connecticut's direct action statute would be inappropriate under the circumstances).

In summary, the Alabama direct action statutes mandate a direct action provision into every insurance contract and create a method of executing upon the proceeds of the insurance policy. Accordingly, we look to Alabama law in determining the manner in which this suit by Morewitz, the judgment creditor, against West of England, the judgment debtor's insurer, should proceed.

C. Arbitration

1. *Alabama Law*

" "Under Alabama law, the injured party acquires a vested interest (secondary) in the nature of a hypothecation of the insured's rights under the policy.' " *Haston v. Transamerica Ins. Servs.,* No. 1930872, 1995 WL 217854, at *2, --- So.2d ----, ---- (Ala. Apr. 14, 1995) (quoting *Maness v. Alabama Farm Bureau Mut. Casualty Ins. Co.,* 416 So.2d 979, 981-82 (Ala.1982)). The injured party, however, cannot bring an action against the insurer until he has recovered a judgment against the insured. *Id.* Furthermore, the injured party's "vested interest' is subject to the qualification that " "the terms of the policy imposing obligations on the insured are effective as against the injured party.' " *Id.* (quoting *George v. Employers' Liab. Assurance Corp.,* 219 Ala. 307,

Circuit are binding on the Eleventh Circuit.

122 So. 175, 177 (1929). In other words, any defenses that are available to the insurer in an action brought by the insured would also be available to the insurer in a direct action brought by the injured party. *Id.*

Consequently, under Alabama law, West of England is able to assert any defenses that would have been available to it as if the present action had been brought by General Development. Arbitration is clearly an affirmative defense that would have been available to West of England in an action brought by General Development. *See American Sugar Refining Co. v. The Anaconda,* 138 F.2d 765, 767 (5th Cir.) (the Federal Arbitration Act recognizes arbitration agreements as affirmative defenses), *cert. granted,* 321 U.S. 758, 64 S.Ct. 620, 88 L.Ed. 1057 (1943), *aff'd,* 322 U.S. 42, 64 S.Ct. 863, 88 L.Ed. 1117 (1944). Therefore, unless the arbitration provision does not apply to these claimants or West of England has waived its right to compel arbitration, Morewitz is bound by the terms of the arbitration agreement between General Development and West of England.

2. *The Federal Arbitration Act*

As we have noted, a dispute arising under a contract of maritime insurance, such as the one involved here, is within the admiralty and maritime jurisdiction of the district court. The fact that Morewitz derives his standing to proceed with this case from the Alabama direct action statutes does not vitiate that jurisdiction. *See Morewitz I,* 896 F.2d 499-500 and n. 5.

The issue of arbitrability under the United States Arbitration Act is a matter of federal substantive law. *Prima*

*Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 402-05, 87 S.Ct. 1801, 1806-07, 18 L.Ed.2d 1270 (1967); *Miller Brewing Co. v. Fort Worth Distributing Co.,* 781 F.2d 494, 497 n. 4 (5th Cir.1986) (rejecting the appellee's citation to Texas law on the issue of whether it had waived the right to compel arbitration). Therefore, federal law comprising generally accepted principles of contract law controls the question of arbitrability.

According to the Federal Arbitration Act of 1952, 9 U.S.C. § 2 (1988), "[a] written provision in any maritime transaction ... to settle by arbitration a controversy thereafter arising out of such contract or transaction" is an enforceable arbitration agreement. Nevertheless, the Act does not require parties to arbitrate when they have not agreed to do so. "It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). We have acknowledged that "[t]he purpose of the Federal Arbitration Act was to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation." *Ultracashmere House, Ltd. v. Meyer,* 664 F.2d 1176, 1179 (11th Cir.1981).

3. *Application*

The arbitration agreement in Rule 64 of the West of England Ship Owners Mutual Protection and Indemnity Association applies between "owners" and the "association." Relying on the specific terms of this provision, Morewitz argues that the deceased crew

members were not "owners." Morewitz also argues that the deceased crew members were not parties to the arbitration agreement and that they should not be bound by it. Notwithstanding our prior discussion that any defenses that would have been available to West of England in an action brought by General Development would also be available to West of England in a direct action brought by the deceased crew members, the cases discussed below favor both of Morewitz's arguments.

First, in *Ocean Eagle-Limitations Proceedings,* 1974 AMC 1629 (D.P.R.), a tanker sank and spilled crude oil into the waters of San Juan Harbor. Numerous claimants brought direct actions suits against the vessel, the owners, and the insurance association. Upon the insurance association's motion for a stay pending arbitration in London, the court noted that "the injured third-party beneficiary of the contract is not a party to the contract ... this is recognized by the limiting language of the arbitration clause which applies to a dispute between a "member' and the "association.' " *Id.* at 1633. Moreover, the court found that the right of action conferred by the Puerto Rico direct action statute was totally independent of the contractual terms binding the insured and the insurer, which the insurer could not abrogate by private agreement.

Second, in the case *In re Talbott Big Foot, Inc.,* 887 F.2d 611 (5th Cir.1989), workers who were injured on a drilling barge filed claims against the drilling company's protection and indemnity

insurer under Louisiana's direct action statute.[15]  Based on the policy provision requiring the insurer and insured to arbitrate coverage disputes, the insurer filed a motion to stay the proceedings pending arbitration, and the district court dismissed the action.  *Id.* at 612.  On appeal, the Fifth Circuit recognized that despite a strong federal policy favoring arbitration, the Act does not require arbitration unless the parties to a dispute have agreed to refer it to arbitration.   *Id.* at 614.   As the Fifth Circuit aptly stated, "[w]e are unaware of any federal policy that favors arbitration for parties who have not contractually bound themselves to arbitrate their disputes."  *Id.*

Although we recognize that Morewitz now "stands in the shoes" of General Development, we are reluctant to mandate arbitration where the claimants clearly did not bargain to do so.  *Cf. AT & T Technologies v. Communications Workers of Am.,* 475 U.S. 643, 648– 49, 106 S.Ct. 1415, 1418-19, 89 L.Ed.2d 648 (1986) (stating that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit....   [A]rbitrators derive their authority to resolve disputes only because *the parties have agreed in advance* to submit such grievances to arbitration.")  (emphasis added and quotation omitted));  *Wheat, First Securities, Inc. v. Green,* 993 F.2d 814,

---

[15]Analogous to the Alabama direct action statutes, Louisiana's direct action statute provides that actions are subject to all of the lawful conditions of the policy or contract and the defenses that could be urged by the insurer in a direct action brought by the insured. *Talbott,* 887 F.2d at 612-13. However, unlike the Alabama statutes, the recovery of a judgment against the insured is not a condition precedent to the bringing of a direct action under Louisiana law. *Id.*

821 (11th Cir.1993) (affirming the district court's holding that a securities broker-dealer that purchased another company's assets was not an assignee of or successor to the customer agreements that contained an arbitration provision); *Goldberg v. Bear, Stearns & Co.,* 912 F.2d 1418, 1419 (11th Cir.1990) (stating that despite a presumption in favor of arbitration, the parties will not be required to arbitrate when they have not agreed to do so).

In light of the cases discussed above, we question whether the arbitration clause in the policy between West of England and General Development applies to the deceased crew members. Moreover, even assuming that the arbitration clause applies, we conclude that West of England has waived any right that it may have had to compel arbitration.

4. *Waiver*

Morewitz bases his waiver argument on West of England's participation in the litigation in the United States District Court for the Eastern District of Virginia. Although Morewitz concedes that West of England was not a party to the Virginia litigation, he argues that rather than challenging coverage when this litigation was commenced, West of England unsuccessfully defended General Development's liability. Essentially, Morewitz argues that West of England should be bound by its failure to arbitrate with General Development when this dispute arose.

Arbitration should not be compelled when the party who seeks to compel arbitration has waived that right.[16] In considering the

---

[16]Although the Arbitration Act uses the term "default," 9 U.S.C. § 3, the case law on this subject employs the term "waiver." *See generally* 3 Fed.Proc., L.Ed. *Arbitration* § 4:24

issue of waiver, we are mindful of the Supreme Court's admonition that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

Nevertheless, the doctrine of waiver is not an empty shell. Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party. *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir.1986). Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate. *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 559 F.2d 268, 269 (5th Cir.1977), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978).

Applying these considerations to the facts in this case, it is apparent to this Court that West of England has waived its right to compel arbitration. During the Virginia litigation, there were disputes between West of England and General Development over the ownership of the M/V IMBROS and over General Development's failure to assist with its defense. West of England was apprised of the significant monetary claims that were being pursued against General Development both in the United States and abroad, but never made a demand to arbitrate its coverage of the M/V IMBROS. Although the

_____

(1981) ("the term "default' has been construed as analogous in meaning to the common-law term "waiver' ").

court in *Tenneco Resins, Inc. v. Davy Intern., AG,* 770 F.2d 416, 419 (5th Cir.1985), noted that a party is not obligated to make a presuit demand for arbitration, we do not believe that an insurer should be permitted to collude with its insured to the detriment of the injured third-party.

In light of the strong federal policy favoring arbitration, we also must examine whether Morewitz has been prejudiced by West of England's delay in demanding arbitration. The House of Lords decision affecting Morewitz's right to arbitrate this dispute in England was not announced until nearly a decade after the Fourth Circuit affirmed General Development's liability for the crew members' deaths. *Firma C-Trade S.A. v. Newcastle Protection and Indem. Ass'n,* 2 Lloyd's Rep. 191 (H.L.1990). Moreover, Morewitz instituted the present lawsuit in 1985, five years before the decision from the House of Lords. We conclude that West of England had ample opportunity to demand arbitration well in advance of the decision that significantly changed the legal position of the parties to the prejudice of Morewitz.

In short, the appropriate time for West of England to contest coverage and demand arbitration with General Development was during the proceedings in the United States District Court for the Eastern District of Virginia. Because West of England has waived its right to arbitrate with General Development, it has also waived its right to demand arbitration with Morewitz.

D. Dismissal with Prejudice

We review the district court's decision to dismiss a case for want of prosecution for abuse of discretion. *See State*

*Establishment,* 838 F.2d at 1582. "The severe sanction of dismissal with prejudice, however, can be imposed only in the face of a clear record of delay or contumacious conduct by the plaintiff." *Id.* (quotation omitted). Dismissal with prejudice is a sanction of last resort that is to be utilized only in extreme situations. *Id.*

As in the *State Establishment* case, Morewitz made a conscious decision that an unsuccessful appeal would mean that the merits of this claim would never be reached. *Id.* at 1582-83 and n. 3. Morewitz requested that the district court certify the arbitration question to this Court prior to dismissing the action, and the district court denied this motion. In *State Establishment,* we found that the district court abused its discretion by dismissing a lawsuit with prejudice under the same circumstances. *Id.* Likewise, we conclude that the district court abused its discretion by dismissing this action with prejudice.[17]

III. CONCLUSION

Therefore, we REVERSE the decision of the district court requiring arbitration, VACATE the order dismissing Morewitz's action with prejudice, and REMAND the case to the district court for further proceedings.

CARNES, Circuit Judge, concurring:

I concur in the result and in all of the majority opinion except Part II.C.3, on pp. ---- - ----. As to that particular part of the opinion, I join only the last sentence, which concludes that West of England waived any right it may have had to compel

---

[17]In light of our decision, West of England's motion for double costs and attorney's fees is denied.

arbitration.  Because of that waiver, there is no need to speculate as to whether the arbitration provision would have applied had there been no waiver;  all such speculation is merely dicta, better left to the law reviews.