**MONTAUK OIL TRANSPORTATION CORPORATION, Plaintiff–Appellant,**

v.

**STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION (BERMUDA) LIMITED, Defendant–Appellee.**

No. 839, Docket 95–7722.

United States Court of Appeals, Second Circuit.

Argued Jan. 18, 1996.

Decided March 22, 1996.

Raymond A. Connell, New York City (Connell Losquadro & Zerbo, New York City, of counsel), for Plaintiff–Appellant.

Richard H. Brown, Jr., New York City (Kirlin, Campbell & Keating, New York City, of counsel), for Defendant–Appellee.

Before: NEWMAN, Chief Judge, MAHONEY and FRIEDMAN,* Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff-appellant Montauk Oil Transportation Corporation ("Montauk") appeals from a judgment entered July 3, 1995 in the United States District Court for the Southern District of New York, David N. Edelstein, *Judge,* that confirmed an arbitral award against Montauk in favor of defendant-appellee Steamship Mutual Underwriting Association (Bermuda) Limited (the "Association" or "Steamship Mutual") in the amount of $133,-105.96, representing the fees and costs of the arbitration. Montauk argues that because a compulsory appearance clause in its insurance contract with the Association conflicts with, and supersedes, the contract's compulsory arbitration clause, the district court erred when it suspended this action and ordered the parties to submit to arbitration in London. We disagree, and accordingly affirm the judgment of the district court.

## Background

Steamship Mutual is a Bermuda-based mutual association of shipowners providing marine protection and indemnity insurance to its members. When a member enters the Association to obtain insurance, the member is subject to the standard terms of entry set forth in the Rule Book of the Association (the "Club Rules"). The Association also issues a "slip" to each member that confirms the

terms of coverage and sets forth any special provisions not stipulated in the Club Rules that are applicable to that member.

Beginning in 1985, Montauk contracted with the Association to cover its vessels for protection and indemnity risks. The parties renewed their contract annually, and effective February 20, 1990, Montauk's coverage was extended through February 20, 1991. Pursuant to this contract, Steamship Mutual issued a slip to Montauk on February 26, 1990 that confirmed coverage for four Montauk vessels "[s]ubject to the [Club] Rules" and "[s]ubject to New York Suable Clause as attached."

Rule 36 of the Club Rules provides a mandatory procedure for the settlement of disputes. It states in pertinent part that:

If any difference or dispute shall arise between a Member and the Club concerning the construction of these Rules or of the Rules applicable to any Class in the Club or of any Bye–Law passed thereunder, or the insurance afforded by the Club under these Rules, or any amount due from the Club to the Member, such difference or dispute shall in the first instance be referred to and adjudicated by the Directors.

*If the Member does not accept the decision of the Directors the difference or dispute shall be referred to the arbitration of two arbitrators, one to be appointed by each of the parties, in London, and the submission to arbitration and all the proceedings therein shall be subject to the provisions of the English Arbitration Act....*

*No Member shall be entitled to maintain any action, suit or other legal proceedings against the Club upon any such difference or dispute unless and until the same has been submitted to the Directors and they shall have given their decision thereon ... and, if such decision be not accepted by the Member ..., unless and until the difference or dispute shall have*

---

* The Honorable Daniel M. Friedman, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

*been referred to arbitration* in the manner provided in this Rule. . . .

(Emphasis added.)

A typewritten "NEW YORK SUABLE CLAUSE" was attached to the slip, and states in pertinent part that:

[T]he Association hereby undertakes to appear in any civil action which the Member may bring against the Association in the United States District Court for the Southern District of New York to recover for any loss or claim payable or alleged to be payable by the Association under the contract of insurance described in this Certificate. . . . Except as to jurisdiction over the person of the Association, the foregoing provision[ ] shall not effect [sic] any defence to which the Association would otherwise be entitled and *shall not change the contractual or other substantive rights and obligations of the Association or of the Member*, which shall all be determined in accordance with English Law.

(Emphasis added.)

On March 6, 1990, the oil barge Cibro Savannah, one of the four vessels covered by the insurance contract, suffered an explosion in New York harbor that caused an oil spill. The expenses and liabilities that Montauk incurred as a result of this incident fell within the terms of the insurance contract, and Montauk promptly notified the Association about the incident. Thereafter, Steamship Mutual learned that Montauk had failed to disclose, prior to the contract's renewal, that Montauk intended to sell its vessels. Accordingly, Steamship Mutual advised Montauk on April 6, 1990 that it was entitled to avoid the policy with respect to all of Montauk's vessels due to this material nondisclosure.

Montauk then brought this suit on June 4, 1990, seeking, *inter alia*, a declaratory judgment that Steamship Mutual was liable under the insurance contract and money damages

for expenses and liabilities arising from the oil spill. In August 1990, Steamship Mutual moved to stay the suit pending arbitration in London. The district court granted Steamship Mutual's motion and ordered that the case be placed on its suspense docket, stating that:

This exact issue regarding the interpretation of the exact same two clauses has been recently decided by this Court in the course of another dispute between the same two parties. It was recently held that "the [New York suable] clause does not eliminate the obligation to proceed with arbitration." *Montauk Oil Transportation Corporation v. Steamship Mutual Underwriting Association*, No. 90 Civ. 3801(JFK), [1991 WL 18149, at *2 (S.D.N.Y. Feb. 5, 1991)]; *[s]ee also Neca Ins. Ltd. v. National Union Fire Ins. Co.*, 595 F.Supp. 95[5], 957–58 (S.D.N.Y.1984). As a result, there is no question but that these two clauses indicate that the parties agreed to arbitrate disputes as provided by Rule 36. *Montauk Oil v. Steamship Mutual, supra.*

*Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Berm.) Ltd.*, No. 90 Civ. 3792(DNE), slip op. at 2, 1991 WL 41657 (S.D.N.Y. Mar. 20, 1991) (first alteration in *Montauk Oil*) (footnote omitted).

Pursuant to Club Rule 36, the dispute was referred to the directors of the Association, who denied Montauk coverage on the basis that it had failed to disclose, prior to renewal, a fact material to the risk borne by the Association under the contract. Montauk then sought arbitration of the dispute. The London arbitrators also ruled in favor of Steamship Mutual on November 16, 1994.

On January 4, 1995, Steamship Mutual moved for confirmation of the London award pursuant to 9 U.S.C. § 207.[1] The district court confirmed the award on June 15, 1995, *see Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Berm.) Ltd.*, No.

---

1. Section 207 provides that:
   Within three years after an arbitral award falling under the [Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958] is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order

confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

90 Civ. 3792(DNE), slip op., 1995 WL 361303 (S.D.N.Y. June 15, 1995), and entered a final judgment on July 3, 1995. This appeal followed.

## Discussion

On appeal, Montauk argues that the "New York Suable Clause" in the slip conflicts with, and supersedes, the compulsory arbitration clause contained in Rule 36. This argument is without merit.

Club Rule 36 provides a mandatory procedure for the settlement of disputes that requires referral of disputes to the Association's directors, and arbitration in any case in which a member of the Association does not accept the decision of the directors. Under the Federal Arbitration Act, "[a] written provision in any maritime transaction ... to settle by arbitration a controversy thereafter arising out of such ... transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Morewitz v. West of Eng. Ship Owners Mut. Protection & Indem. Ass'n (Lux.)*, 62 F.3d 1356, 1364 (11th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 915, 133 L.Ed.2d 845 (1996). Thus, Steamship Mutual has an affirmative right to arbitrate this dispute. *See Local 1814, Int'l Longshoremen's Ass'n. v. New York Shipping Ass'n., Inc.,* 965 F.2d 1224, 1232 (2d Cir.1992) ("Arbitration is a contractual right ...."), *cert. denied,* 506 U.S. 953, 113 S.Ct. 406, 121 L.Ed.2d 331 (1992); *cf. Morewitz,* 62 F.3d at 1364 ("Arbitration is clearly an affirmative defense....").

The New York Suable Clause does not vitiate this contractual right, given its clear statement that it "shall not change the contractual or other substantive rights and obligations of the Association or of the Member." *See Hart v. Orion Ins. Co.,* 453 F.2d 1358, 1361 (10th Cir.1971) ("The assent of the insurer to jurisdiction does not prevent it from raising [an arbitration] defense based on policy terms."); *West Shore Pipe Line Co. v. Associated Elec. & Gas Ins. Servs. Ltd.,* 791 F.Supp. 200, 204 (N.D.Ill.1992) ("The ... service of suit clause can therefore reasonably be interpreted to facilitate litigation following arbitration, concerning the validity of enforcement of any arbitration ruling, without curtailing the mandatory arbitration provision in any manner."); *see also China Union Lines Ltd. v. American Marine Underwriters, Inc.,* 458 F.Supp. 132, 134 n. 5 & 136 n. 13 (S.D.N.Y.1978) (following *Hart,* 453 F.2d at 1360–61).

The principal effect of the New York Suable Clause is to resolve the issue of personal jurisdiction over a foreign association, since "an arbitration award cannot be enforced without access to the courts." *Neca,* 595 F.Supp. at 958; *see also Montauk Oil,* 1991 WL 18149 at *2. Montauk argues that this interpretation of the clause is commercially unreasonable because Steamship Mutual has no assets in New York and would be unaffected by judicial enforcement of an award there. However, a contractual provision is not rendered superfluous or ineffective simply because it may not apply to a particular case. The New York Suable Clause was not specially crafted by Montauk and Steamship Mutual for this insurance contract. Rather, it is a standard compulsory appearance provision commonly incorporated into such contracts to enable parties to enforce an arbitral award, *see Neca,* 595 F.Supp. at 958, or to compel arbitration, *see Hart,* 453 F.2d at 1361.

## Conclusion

The judgment of the district court is affirmed.