United States Court of Appeals,

Eleventh Circuit.

No. 96-2931.

S. Paul WHITE, Plaintiff-Appellant,

Glynnola White, Plaintiff,

v.

MERCURY MARINE, DIVISION OF BRUNSWICK, INC., Brunswick Corp., Defendants-Appellees,

Ronald Goll, et al., Movants.

Dec. 1, 1997.

Appeal from the United States District Court for the Middle District of Florida (No. 94-395-CIV-FTM-250), Henry L. Adams, Judge.

Before ANDERSON, DUBINA and CARNES, Circuit Judges.

CARNES, Circuit Judge:

This appeal concerns a maritime worker's effort to recover from the manufacturer of marine engines for the hearing loss he suffered because of exposure to the noise of those engines during his employment. Plaintiff S. Paul White appeals the district court's grant of summary judgment in favor of Mercury Marine Division of Brunswick, Inc. ("Mercury Marine"). The district court held that White's claim was barred by the general maritime statute of limitations, 46 U.S.C.App. § 763a. On appeal, White concedes that he cannot recover for the hearing loss he suffered due to engine noise exposure which occurred outside § 763a's three-year limitations period. However, he asks us to adopt a "modified continuing tort theory" under which he would not be barred from recovering for the hearing loss suffered due to exposure within the limitations period. For the reasons set out below, we decline to adopt the modified continuing tort theory in general maritime law and affirm

the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

S. Paul White began his employment with the Florida Marine Patrol ("FMP") in 1964. As a patrol officer from 1964 to 1984, White spent six to eight hours per day, 5 days a week, patrolling Florida's territorial waters in FMP boats. In 1984, White achieved the rank of sergeant, and later he became a lieutenant. In his capacity as a sergeant or lieutenant, White spent as much as half of his work time on land. However, he spent the remainder of his work time in FMP boats. White retired in 1995.

During his thirty-one years as an FMP officer, White patrolled Florida's waters in several types of boats. One common feature of those boats was that they had Mercury Marine engines. The amount of engine noise exposure depends on a variety of factors, including the size of the engine, its installation, any muffling of the engine, how open the throttle is, and the location of the operator. White's FMP boats had either 50, 120, 140 or 260 horsepower engines, and the operator was positioned close to the engine. White, as a water patrol officer, was exposed to substantial noise from Mercury Marine's engines throughout his employment.

Not surprisingly, White now has poor hearing. He wears two hearing aids. Understandably, he attributes his poor hearing to being continuously exposed for more than three decades to the loud noise created by Mercury Marine engines on the boats he operated. The parties agree that White's hearing is impaired, and they also agree that at least as early as 1984 White became aware that the loud engine noise was causing him hearing loss. In that year, a doctor advised White that his constant exposure to loud engine noise was causing his hearing loss, and that he should wear ear

protection.[1] Another doctor gave White the same advice in 1988. In 1990 White filed a workman's compensation claim in which he stated that the constant exposure to engine noise had caused his gradual loss of hearing.

It was not until 1994 that White sued Mercury Marine in federal district court.[2] His complaint included claims against Mercury Marine for negligence, strict liability, and breach of the implied warranties of merchantability and fitness for a particular purpose. Mercury Marine deposed White, thereby learning of his long-standing awareness of the cause of his hearing loss. Shortly thereafter, Mercury Marine filed a motion for summary judgment, contending that the three-year statute of limitations for general maritime claims, 46 U.S.C.App. § 763a, barred White's claims.

In response, White argued for application of the "modified" continuing tort theory, which is best explained in terms of that which it modifies, the "pure" continuing tort theory. Under the pure version of the continuing tort theory, a cause of action for any of the damages a plaintiff has suffered does not "accrue" until the defendant's tortious conduct ceases. *See, e.g., Everhart v. Rich's Inc.,* 229 Ga. 798, 194 S.E.2d 425, 428 (1972)(holding that the statute of limitations is tolled until the defendant's continuing tortious activity is eliminated). Under the pure continuing tort theory, a plaintiff may recover for all the harm he has suffered, not just that suffered during the limitations period. *See Taylor v. Meirick,* 712 F.2d 1112, 1118 (7th Cir.1983). By contrast, the modified version of that theory allows recovery for only that part of the injury the plaintiff suffered during the limitations period. Here, that would be the damage to White's hearing caused by the noise

---

[1]White never wore ear protection while he was on the job. The record is unclear as to whether he simply chose not to wear it or the performance of his duties precluded him from doing so.

[2]White's wife also sued, asserting derivative causes of action, but she does not appeal the dismissal of her claims.

exposure occurring within three years before the lawsuit was filed. Apparently White chose to argue for the modified version of the continuing tort theory instead of the more plaintiff-friendly pure version, because he felt that with the modified version he would have more to work with insofar as the decisions of this Circuit were concerned.

The district court granted Mercury Marine's motion for summary judgment, holding that the statute of limitations bars White's claims. The court began its opinion by noting that this case fell within the admiralty jurisdiction—a point which White does not contest in this Court—and therefore general maritime law applied. The general maritime statute of limitations, 46 U.S.C.App. § 763a, states that a cause of action must be "commenced within three years from the date the cause of action accrued." Finding no controlling precedent that defines when a cause of action "accrues" under the general maritime law, the court chose to apply the "discovery rule," which had been applied by the Supreme Court in *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), a Federal Employers' Liability Act case. Because White had discovered his cause of action more than three years before he filed suit, the district court held that White's cause of action had accrued more than three years before the complaint was filed, therefore, the suit was time-barred. The court entered judgment in favor of Mercury Marine, and White appealed.

## II. STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo,* applying the same legal standard employed by the district court. *See, e.g., Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1117 (11th Cir.1993). Summary judgment is appropriate if the record shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Eberhardt v. Waters,* 901 F.2d 1578, 1580 (11th Cir.1990). When deciding whether summary judgment is appropriate, "all evidence and reasonable factual inferences drawn therefrom" are

reviewed in a light most favorable to the non-moving party. *Warren v. Crawford,* 927 F.2d 559, 562 (11th Cir.1991).

Whether the district court should have applied the modified continuing tort theory or the discovery rule is a question of law, which we decide *de novo. See, e.g., Blohm v. Commissioner,* 994 F.2d 1542, 1548 (11th Cir.1993).

### III. DISCUSSION

The parties agree that White's claim is governed by general maritime law. *See Southern Pacific Co. v. Jensen,* 244 U.S. 205, 215, 37 S.Ct. 524, 528, 61 L.Ed. 1086 (1917)("[I]n the absence of some controlling statute the general maritime law as accepted by the federal courts constitutes part of our national law applicable to matters within the admiralty and maritime jurisdiction."). However, the general maritime statute of limitations, 46 U.S.C.App. § 763a, offers little specific guidance for choosing between the modified continuing tort theory and the discovery rule. It states:

> Unless otherwise specified by law, a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued.

46 U.S.C.App. § 763a. "Accrue" is the operative word, the marking point that gives the statute its bite. Unfortunately, Congress did not define "accrue," and thus failed to specify the depth of the bite. Mercury Marine argues that we should define "accrue" by referring to the discovery rule, while White argues that "accrue" as used in § 763a, should encompass the modified continuing tort theory. Neither party's position finds much support in the word "accrue" itself, which simply means to become enforceable. *See Random House Unabridged Dictionary,* 13 (2d ed.1993). The dictionary definition of accrue is unhelpful because when White's claims became legally enforceable, or when they stopped being enforceable, is the issue.

White concedes here, as he did in the district court, that he knew of both his injury and its

cause more than three years before he filed suit. If we use the discovery rule to define when White's cause of action accrued, the statute of limitations bars his suit. If we use the modified continuing tort theory, it does not. This appeal turns on our choice between the two.

## A. SUPPLEMENTING GENERAL MARITIME LAW

Before we choose between the discovery rule and the modified continuing tort theory, we address White's contention that we should "supplement" the general maritime law on this issue with Florida law. The Supreme Court followed the approach of "supplementing" state law for general maritime law purposes in *Yamaha Motor Corp., U.S.A. v. Calhoun,* --- U.S. ----, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996). In that case, the Supreme Court held that courts may use state law to supplement the remedies available for wrongful death under the general maritime law. *See id.,* --- U.S. at ----, 116 S.Ct. at 629. Noting that Congress had not prescribed a comprehensive tort regime to be uniformly applied, the Court reasoned that state remedies were not displaced by maritime law. *See id.* --- U.S. at ----, 116 S.Ct. at 628; *see also Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 544-47, 115 S.Ct. 1043, 1054, 130 L.Ed.2d 1024 (1995)(holding that the exercise of admiralty jurisdiction "does not result in automatic displacement of state law."). The *Yamaha* court did, however, reiterate that state laws inconsistent with the substance of federal maritime law should be given no effect. *See Yamaha,* --- U.S. at ----, 116 S.Ct. at 624.

Florida has adopted the pure continuing tort theory. *See Seaboard Air Line R.R. Co. v. Holt,* 92 So.2d 169, 170 (Fla.1956); *Halkey-Roberts Corp. v. Mackal,* 641 So.2d 445, 447 (Fla.Dist.Ct.App.1994). Whether we may rely on Florida's adoption of that theory to supplement the general maritime law depends on the two factors outlined in *Yamaha:* 1) Is the pure continuing tort theory inconsistent with the substance of federal maritime law; and 2) Has Congress prescribed a rule in this area that must be uniformly applied in federal maritime law cases? *See Yamaha,* ---

U.S. at ----, 116 S.Ct. at 628. The pure continuing tort theory is not inconsistent with the general maritime statute of limitations because the word "accrue" does not embrace or reject it.

However, application of Florida law would contradict the second *Yamaha* requirement of the absence of congressional action in the area. The very existence of a federal general maritime statute of limitations implies that it should be applied uniformly across the nation. The federal concern with balancing the interests of maritime plaintiffs to obtain redress for their injuries against the interests of defendants and the court system in avoiding the problems caused by stale claims does not vary from state to state. Accordingly, the definition of the federal statutory term "accrue" should not vary based on whether the forum state has adopted a version of the continuing tort theory. *See Yamaha,* --- U.S. at ----, n. 8, 116 S.Ct. at 626, n. 8 ("[S]tate law must yield to the needs of a uniform federal maritime law when [the law makes] inroads on a harmonious system")(internal citation and quotes omitted); *In re Amtrak "Sunset Limited" Train Crash,* 121 F.3d 1421, 1424-25 (11th Cir.1997)(noting that *Yamaha* did not overrule the "bedrock admiralty principles" of harmony and uniformity in admiralty and maritime law). Thus, we cannot use Florida law to supplement the general maritime statute of limitations in this or any other case, and that would be equally true if Florida had adopted the modified continuing tort theory that White espouses.

### B. CONSTRUCTION OF SECTION 763a

Given the ambiguity of the statutory term "accrued," this would be an appropriate occasion in which to resort to legislative history. *See, e.g., United States v. Garcia,* 718 F.2d 1528, 1533 (11th Cir.1983) ("Review of legislative history is only justified when a statute is inescapably ambiguous"). However, neither party has pointed us to anything in the legislative history of § 763a that is helpful, nor have we been able to find any guidance there ourselves. Decisional law is a different matter.

Although there is no binding precedent directly on point, we do not write on an entirely clean slate. We have for guidance two Supreme Court decisions interpreting statute of limitations language materially identical to that of § 763a. Those cases, *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), and *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), involved interpretations of the Federal Employers' Liability Act (FELA) and Federal Tort Claims Act (FTCA), respectively. Although the general maritime law has been recognized as a distinct body of federal common law, *see In re Air Disaster At Lockerbie Scotland,* 37 F.3d 804, 828 (2d Cir.1994), this Court has used precedents from other areas of law to inform its maritime decisions in the past, *see, e.g., Flores v. Carnival Cruise Lines,* 47 F.3d 1120, 1125 n. 4 (11th Cir.1995).

The first Supreme Court precedent, *Urie v. Thompson* construed the FELA language requiring that any lawsuit under the statute be filed "within three years from the day the cause of action accrued." In that case, a railroad worker sued his employer a year after he had become incapacitated by silicosis. *See id.,* at 165-66, 69 S.Ct. at 1022-23. He had been exposed to silica dust for thirty years before filing suit. The railroad argued that because the worker must have contracted silicosis more than three years before his suit was filed, his cause of action had "accrued" outside of the limitations period, therefore, the suit was barred. *See id.* at 169, 69 S.Ct. at 1024. The Supreme Court rejected that interpretation of the word "accrued" in favor of the discovery theory of accrual, under which the cause of action accrues on the date the worker first knew or should have known of his injury and its cause. *See id.* at 170, 69 S.Ct. at 1025 (citing *Associated Indemnity Corp. v. Industrial Accident Comm'n,* 124 Cal.App. 378, 12 P.2d 1075, 1076 (Cal.App. 2 Dist.1932)).

The *Urie* court explained that adopting an actual occurrence or onset theory of accrual would

punish the worker's "blameless ignorance" in ways that the FELA's "humane legislative plan" never intended. *See id.* Indeed, it would result in the FELA providing nothing more than a "delusive remedy" for occupational illnesses that have a slow and gradual onset from accumulated exposure. In the actual case before it, for example, the initial onset theory would mean that "at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with the slow and tragic disintegration of his lungs," and his "failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness" would bar any recovery. *Id.* at 169, 69 S.Ct. at 1024.

The railroad contended alternatively that each inhalation of silica dust was a separate tort giving rise to a fresh cause of action. *See id.* Therefore, it argued, Urie's recovery should be limited to the damages caused by the dust he inhaled during the three years preceding his suit. The Supreme Court rejected that argument. Considering the overall purpose of the Federal Employer's Liability Act, the court stated:

> mechanical analysis of the "accrual" of [Urie's] injury—whether breath by breath, or at one unrecorded moment in the progress of the disease—can only serve to thwart the congressional purpose [of including occupational diseases in the category of compensable injuries]

*Id.* The Court criticized the "breath by breath" measurement of accrual, because it would "limit petitioner's damages to that aggravation of his progressive injury traceable to the last eighteen of his employment." *Id.* at 170, 69 S.Ct. at 1024.

The modified continuing tort theory the petitioner urges us to adopt today is little more than the modern equivalent of the "breath by breath" theory that *Urie* rejected. Under the modified continuing tort theory a plaintiff may recover damages for any increase in injury caused by the defendant within the limitations period, even though he "discovered" his injury before the limitations

period.  *See Santiago v. Lykes Bros. S.S. Co., Inc.,* 986 F.2d 423, 428 (11th Cir.1993).[3]

Faced with the similarity between the old "breath by breath" theory rejected in *Urie* and the modified continuing tort theory he favors, White argues that the reason the Supreme Court rejected the breath by breath theory in *Urie* was that it as unfairly limited the plaintiff's recovery under the facts of that case, while application of the materially identical modified continuing tort theory will permit this plaintiff to recover.  However, the discovery rule, as a rule of law, is not to be applied only when it will benefit a plaintiff.  It protects plaintiffs who are unaware of their injury, while requiring those plaintiffs who have "discovered" their injury to file suit within the prescribed period.  It, like the statute of limitations in general, is a neutral balancing of interests, which must be neutrally applied regardless of the party it benefits in a particular case.  That point is illustrated by the *Kubrick* decision, which applied the discovery rule to the detriment of the plaintiff in that case.

In *United States v. Kubrick,* 444 U.S. 111, 113, 100 S.Ct. 352, 354-55, 62 L.Ed.2d 259

---

[3]White contends that this Court adopted the "modified" continuing tort theory in *Santiago,* a Jones Act case.  *Santiago* involved a maritime worker who suffered a hearing loss after spending years in a ship's engine room.  The *Santiago* Court concluded that the district court's jury instructions, which were really a recitation of the pure continuing tort theory, were incorrect statements of the continuing tort theory.  *See id.* at 427.  In other words, if a continuing tort theory was to be applied in a Jones Act case, it should be the modified instead of the pure version.  White argues that this Court would not have outlined the "proper" continuing tort theory for the trial on remand had it not accepted the theory.

So it might seem, except that the *Santiago* Court went out of its way to avoid making that theory part of the law of this Circuit.  The Court pointed out that we had applied the discovery rule instead "in numerous other federal statutory contexts," *id.* at 427 and n. 3, and noted that since the split the Fifth Circuit had rejected the continuing tort theory in a Jones Act case involving similar facts, *see id.* at 427.  The actual holding in *Santiago* was that the relevant jury instruction changed the issue to the surprise and detriment of the defendant on the last day of trial, and was also "an erroneous statement of the law under the continuing tort theory."  *Id.* The most the *Santiago* Court was willing to say as to the law of the Circuit was that, "[t]he Eleventh Circuit has not squarely addressed the issue of the continuing tort theory under the Jones Act," and "[w]e do not rule out the continuing tort theory."  *Id.* at 427-28.  That decision did not rule the theory in, either.

(1979), the Supreme Court was faced with the task of construing the Federal Tort Claims Act statute of limitations, which barred any claim not presented to the proper federal agency "within two years after such claim accrues." The issue in *Kubrick* was whether a claim "accrues" when the plaintiff knows of both his injury and its cause, but does not know that the injury was negligently inflicted. *See id.* at 116, 100 S.Ct. at 356. The Supreme Court rejected the contention that a plaintiff must know of a tortfeasor's negligence before a cause of action will accrue. *Id.* at 122, 100 S.Ct. at 359. The Court reasoned that plaintiffs who are armed with the facts about the harm they have suffered, namely their injury and its cause, are able to protect themselves by seeking advice in the medical and legal communities. *Id.* at 123, 100 S.Ct. at 360. The Supreme Court applied the discovery rule in *Kubrick,* as it did in *Urie,* and refined that rule to clarify that discovery of the injury and its cause—and not the realization that a cause of action exists—marks the date the limitations period starts running. As it happened, under the facts of that case, the discovery rule operated to bar the plaintiff's lawsuit, because he had been aware of his injury and its cause for more than two years before he presented a claim. *See id.* at 118-125, 100 S.Ct. at 357-61.

In its *Kubrick* opinion, the Supreme Court noted that statutes of limitations often bar perfectly valid claims, and indeed "that is their very purpose." *Id.* at 125, 100 S.Ct. at 361. They exist as statutes of repose which, after plaintiffs have had what the legislature deems a reasonable period of time to bring claims, "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *Id.* at 117, 100 S.Ct. at 357. The importance legislatures have accorded the interests protected by civil statutes of limitations is evident from the fact that they are as ubiquitous as the rights whose vindication they condition upon timely assertion.

So, twice the Supreme Court has been presented with federal statute of limitations language materially identical to that in the general maritime statute of limitations, and twice the Supreme Court has held that courts should use the discovery rule to determine when a cause of action accrues. It is a familiar canon of statutory construction that courts should generally construe similar statutory language similarly. *See, e.g., EEOC v. Reno,* 758 F.2d 581, 583-84 (11th Cir.1985)(finding that because provisions of the Age Discrimination in Employment Act "were taken *in haec verba* from Title VII, decisions under the analagous section of Title VII[are] highly relevant to the issue before [the Court]"); *cf. also Knight v. Georgia,* 992 F.2d 1541, 1545 (11th Cir.1993)(using substantial body of case law from another, similar provision of the Age Discrimination in Employment Act to guide the interpretation of the operative provision); *Bodzy v. Commissioner,* 321 F.2d 331, 335 (5th Cir.1963)(holding that "provisions of the Internal Revenue Code should be interpreted similarly where similar language is used"). We see no good reason to give the term "accrue" as Congress used it in the general maritime statute of limitations a different meaning from that the Supreme Court gave the identical term when Congress used it in the FELA and FTCA statutes.

Furthermore, it could be argued that Congress has tacitly accepted the Supreme Court's construction of the word "accrue." Congress has amended neither the FELA nor the FTCA since the Supreme Court decided *Urie* and *Kubrick.* True, it is always treacherous to try to divine congressional intent from silence. As one court has aptly put it, "[n]ot every silence is pregnant." *State of Illinois Dept. of Public Aid v. Schweiker,* 707 F.2d 273, 277 (7th Cir.1983). "In some cases, Congress intends silence to rule out a particular statutory application, while in others Congress' silence signifies merely an expectation that nothing more need be said in order to effectuate the relevant legislative objective. An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent."

*Burns v. United States,* 501 U.S. 129, 136, 111 S.Ct. 2182, 2186, 115 L.Ed.2d 123 (1991). However, such an inference is not contrary to any evidence of congressional intent here. The inference that Congress did not disapprove use of the discovery rule to define accrual for purpose of federal statutes of limitations is perhaps strengthened by the penultimate sentence of the *Kubrick* opinion. There, the Supreme Court practically invited Congress to set things right if the Court had misjudged the legislative intent on the matter; it did so by noting that Congress had the ultimate power to change the meaning of "accrue." *See Kubrick* at 127, 100 S.Ct. at 361. Nearly two decades have passed, and Congress has not exercised that power.

Congress passed the general maritime statute of limitations—using the word "accrue"—in 1980, which was after both *Urie* and *Kubrick* were decided. Congress' continued use of the term "accrue," without even the slightest indication of disagreement with those two decisions, suggests that Congress tacitly accepted the Court's interpretation, or at least was not noticeably upset with it. After all, Congress is assumed to act with the knowledge of existing law and interpretations when it passes new legislation. *See Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 382, n. 66, 102 S.Ct. 1825, 1841, n. 66, 72 L.Ed.2d 182 (1982). We presume that Congress "expects its statutes to be read in conformity with [Supreme Court] precedents." *United States v. Wells,* --- U.S. ----, ----, 117 S.Ct. 921, 929, 137 L.Ed.2d 107 (1997).

Finally, we note that in the past we have adopted the discovery rule where Congress has failed to enact a statute of limitations to govern various federal causes of action. *See Bowling v. Founders Title Co.,* 773 F.2d 1175, 1178 (11th Cir.1985)(holding that the discovery rule applies to civil RICO claims); *Durham v. Business Management Assoc.,* 847 F.2d 1505, 1508 (11th Cir.1988)(same as to securities claims); *Mullinax v. McElhenney,* 817 F.2d 711, 716 at n. 2 (11th Cir.1987)(same as to 28 U.S.C. § 1983 claims). In *Bowling v. Founders Title Co.,* we noted that

while state statutes of limitations set the limitations period for civil RICO claims, the time of accrual was governed by federal law. *See Bowling,* 773 F.2d at 1178 *citing Rawlings v. Ray,* 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605 (1941). In that case, we chose consistency in the application of the "general federal rule"—the discovery rule—over a rule similar to the "pure" continuing tort theory. *See id.* ("[Adopting the discovery rule] is consistent with our practice in related fraud and securities cases").

For all of these reasons, we hold that a cause of action "accrues" for the purposes of 46 U.S.C.App. § 763a when the plaintiff knew or should have known of his injury and its cause. Because it is undisputed that White knew more than three years before he filed suit that his loss of hearing was caused by exposure to the loud engine noise, the district court correctly held that his lawsuit was barred by the statute of limitations.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.

ANDERSON, Circuit Judge, specially concurring:

I concur in the result because application of the discovery rule makes sense in this case involving a manufacturer whose only acts which might give rise to liability occurred years ago in the manufacture and sale of the motor. For example, there is no claim that defendant was guilty of any continuing violation of any regulatory noise standard. Thus, I need not address the choice between the discovery rule and the modified continuing tort theory in other contexts where the active and continuing nature of the tort may make it inequitable to deny recovery for that tortuous action occurring within the statute of limitations period. *See Page v. United States,* 729 F.2d 818 (D.C.Cir.1984).