Nancy FREUNDT–ALBERTI, et al., Plaintiffs,

v.

MERRILL, LYNCH, PIERCE, FENNER & SMITH, INC., Defendant.

No. 91–1882–CIV.

United States District Court, S.D. Florida.

March 19, 2001.

Kendall Brindley Coffey, Jeffrey Bruce Crockett, Aragon Burlington Weil & Crockett, Miami FL, for Nancy Freundt–Alberti.

Jeffrey Bruce Crockett, Aragon Burlington Weil & Crockett, Miami, FL, for Oscar Freundt Roselli, Lucciola Alberti De Freundt, and Oscar Eduardo Freundt–Alberti.

Bennett Falk, Sergio Oscar Alvarez–Mena, III, William James Hall, III, Morgan Lewis & Bockius, First Union Financial Center, Miami, FL, for Merrill, Lynch, Pierce, Fenner & Smith, Incorporated.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MORENO, District Judge.

THIS CAUSE came before the Court upon Defendant Merrill, Lynch, Pierce, Fenner & Smith Inc.'s ("Merrill Lynch's") Motion for Summary Judgment (**docket no. 335**), filed on *October 4, 2000.*

THE COURT has considered the motion, responses, and the pertinent portions of the record, and is otherwise fully advised in the premises. Because the Court finds that Plaintiffs' federal securities claims are time-barred and that Plaintiffs' state law claims must be arbitrated, the Court GRANTS Defendant's Motion for Summary Judgment.

### BACKGROUND

Plaintiffs' Fourth Amended Complaint contains five counts. Count I, "Fraudulent Misrepresentations and Omissions," Count II, "Unsuitability," and Count III, "Churning," all are based upon the Securities Exchange Act of 1934, § 10(b), 15 U.S.C.

§ 78j(b), and Rule 10b–5. Count IV, "Breach of Contract," is based upon Defendant's alleged breaches of the parties' Joint Account Agreements. Count V, "Chapter 517, Florida Statutes," alleges that the transactions in Plaintiffs' account were investments within the meaning of Chapter 517, Florida Statutes, and that Defendant engaged in a variety of fraudulent and misleading practices to the detriment of Plaintiffs' investments. Lastly, Plaintiffs amended the complaint on February 28, 2000 to include Count VI, "Breach of Fiduciary Duty."

Defendant moves for summary judgment on all of Plaintiffs' federal statutory claims because the claims are time-barred. Defendant moves for summary judgment on all of Plaintiffs' state law claims based upon the parties' contractual agreement to have all disputes arbitrated, except for federal statutory claims. Plaintiffs counter by arguing that it is disputed whether the federal claims are time-barrel and that Defendant waived its right to arbitration.

## *LEGAL STANDARD*

Summary judgment is authorized where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## *LEGAL ANALYSIS*

### I. Tolling of Statute of Limitations

Defendant seeks to dismiss Plaintiffs' federal securities claims (Counts I, II, and III) based upon a tolling of the applicable statute of limitations. In *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), the Supreme Court ruled that litigation of Plaintiffs' federal claims "must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Id.* at 364, 111 S.Ct. 2773. Defendant posits that Plaintiffs were on both actual and inquiry notice of the alleged violations well before one year prior to commencing the instant lawsuit on August 30, 1991, and, as such, the claims are time-barred.

Plaintiffs counter by arguing that the *Lampf* decision established an actual notice standard, as opposed to an inquiry notice standard, for determining the start time for calculating the statute of limitations, relying upon *Berry v. Valence Tech., Inc.*, 175 F.3d 699 (1999). Under the actual notice standard, Plaintiffs contend that they did not have actual notice of the alleged violations until their replacement broker at Merrill Lynch informed them in December 1990 or January 1991 that the account balance was only $1.1 million.

 The Eleventh Circuit has not ruled upon whether inquiry or actual notice is the appropriate standard for triggering the statute of limitations under *Lampf.* "However, every circuit to have addressed

the issue since *Lampf* has held that inquiry notice is the appropriate standard." *Id.* at 703–04 (listing the various circuits that have ruled upon the issue). Plaintiffs' assertion that the *Berry* court held that actual notice is the appropriate standard is patently contradicted by the opinion. Specifically, the *Berry* court ruled that "we need not decide whether actual discovery or inquiry notice applies, because under either standard the *Forbes* article did not trigger the statute of limitations." *Id.* at 704. This Court joins the circuits that have ruled upon the issue and finds that inquiry notice is the appropriate standard. *See Carley Capital Group v. Deloitte & Touche, L.L.P.*, 27 F.Supp.2d 1324, 1341 (N.D.Ga.1998) (holding inquiry notice to be appropriate standard under *Lampf*); *cf. White v. Mercury Marine*, 129 F.3d 1428, 1435 (11th Cir.1997) ("[I]n the past we have adopted the discovery rule where Congress has failed to enact a statute of limitations to govern [civil] federal causes of action.").

Thus, the Court must determine whether Plaintiffs were on inquiry notice of the alleged violations prior to August 30, 1990. Under the objective inquiry notice standard, the statute of limitations begins to run at the point where, in the exercise of reasonable diligence, Plaintiffs should have discovered the fraud. *E.g., Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1549 (10th Cir.1996). " 'Storm warnings' of the possibility of fraud trigger a plaintiff's duty to investigate in a reasonably diligent manner." *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 128 (1st Cir.1987) (citation omitted); *see also Kennedy v. Josephthal & Co.*, 814 F.2d 798, 802 (1st Cir.1987) ("Inquiry notice is triggered by evidence of

the possibility of fraud, not full exposition of the scam itself.").

In the instant case, it is undisputed that in 1987 Plaintiffs vested the family's financial decision-making responsibilities with the daughter, Plaintiff Nancy Fruendt–Alberti ("Nancy"), due to the father's ailing health.[1] The investing instructions were clear: Plaintiffs wanted all of their money in conservative United States bonds, which could be liquidated swiftly upon notice. (4th Am.Compl. at ¶ 10) ("Plaintiff specifically instructed Escarpenter of Merrill Lynch to purchase U.S. government backed obligations to avoid risk of loss of principle, and to keep the assets ready for liquidation as needed."). Due to the political climate in Peru in 1987, Plaintiffs and Defendant agreed to open a post office box in Florida for Plaintiffs' account statements to be mailed.

In October 1989, it is undisputed that Nancy went to the post office box in Florida for the first time and discovered that Defendant had not sent any account statements. (Prior to this time, the parties had discussed the account over the telephone.) Plaintiffs were concerned, and Nancy agreed to meet in Florida with Defendant to discuss the missing account statements and the fact that the value of the account had not increased despite what should have been years of accrued interest through 1988 and 1989. At this meeting, Defendant produced the September 1989 account statement, which explicitly indicated that Plaintiffs' money was invested in mutual funds (stocks), as opposed to United States bonds. At her deposition for this lawsuit, Nancy was able to read the account statement and admitted that there were no United States bonds listed on the account statement.

---

**1.** Being fluent in English and Spanish, Nancy would translate conversations between her father and Defendant's former investment advisor, concerning her father's investments prior to 1987.

■ The viewing of the September 1989 account statement, coupled with Defendant's failure to send account statements to the post office box as agreed and Plaintiffs' concern over the lack of increase in the account's value through 1988 and 1989, are more than sufficient "storm warnings" to trigger Plaintiffs' duty to investigate. *Maggio*, 824 F.2d at 128; *see also Koke v. Stifel, Nicolaus & Co., Inc.*, 620 F.2d 1340, 1343 (8th Cir.1980) (stating that "[i]nvestors are not free to ignore warning signals[,]" ruling that furnishing of confirmation slips and account statements "were sufficient to require the initiation of an inquiry."). "A plaintiff who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation, and is charged with the knowledge of all facts such an investigation would have disclosed." *Jensen v. Snellings*, 841 F.2d 600, 607 (5th Cir.1988); *see also Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 351–52 (describing the objective inquiry notice standard as "whether she had constructive notice of facts sufficient to create a duty to inquire further into the matter").

Plaintiffs assertion that they did not know of the fraud until their replacement broker at Merrill Lynch informed them in December 1990 or January 1991 that the account balance was valued at only $1.1 million, viewed in the light most favorable to Plaintiffs, does not create a disputed issue of material fact with respect to notice. *See Jensen*, 841 F.2d at 607 ("[A]n act of concealment should not relieve the plaintiff of his duty to exercise reasonable diligence to discover the fraud."). There is no disputed issue of fact for a jury to resolve with respect to whether Plaintiffs were on inquiry notice more than one year prior to initiating the instant lawsuit on August 30, 1991.

## II. No Waiver of Arbitration

Defendant moves for summary judgment on all of Plaintiffs' state law claims (Counts IV, V, and VI) because the parties contracted to have all disputes between the parties arbitrated, except for federal statutory claims. Plaintiffs respond by arguing that Defendant waived its right to have such claims arbitrated. Plaintiffs go to great lengths to highlight the differing litigation postures of Defendant with respect to Plaintiffs' state law claims throughout the lawsuit to amplify the waiver argument. Although the Court is unsure whether Plaintiffs have "unclean hands" that prevent them from raising the equitable waiver argument, the arbitration issue may be summarily resolved by focusing on the prejudice aspect of the waiver of arbitration doctrine under Eleventh Circuit precedent.

■ As Plaintiffs aptly point out, under Eleventh Circuit law, "[a] party may be deemed to have waived its right to arbitrate a dispute 'when a party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.'" *Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (*quoting Miller Brewing Co. v. Fort Worth Dist. Co.*, 781 F.2d 494, 497 (5th Cir.1986)); *see also Morewitz v. West of England Ship Owners Mut. Protection & Indemnity Assoc. (Luxembourg)*, 62 F.3d 1356, 1366 (11th Cir.1995) ("Waiver occurs when a party seeking arbitration substantially participates in litigation . . . and this participation results in prejudice to the other party."). The prejudice prerequisite to a finding of waiver is consistent with the strong federal presumption in favor of arbitration. *E.g., Moses H. Cone Mem'l Hosp. v. Mercury Contr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("[Q]uestions of arbitrability must be ad-

dressed with a healthy regard for the federal policy favoring arbitration.").

Plaintiffs posit that they have been prejudiced by Defendant's activities in this litigation in two ways. First, Plaintiffs argue that, at present, their right to arbitration is time-barred because there is a six-year time limit under the arbitration rules of the National Association of Securities Dealers, Inc. ("NASD") and the New York Stock Exchange, Inc. ("NYSE") to initiate arbitration after the occurrence or event that gives rise to the controversy. Second, Plaintiffs argue that they have been prejudiced by Defendant's invoking the judicial process, including discovery and appellate practice.[2]

■ With respect to Plaintiff's first argument that arbitration is time-barred, Defendant counters in its Reply Memorandum that arbitration is not time-barred. The parties agreed to arbitrate before a panel of arbitrators appointed by either NASD, NYSE, or another self-regulatory organization ("SRO"). While NASD and NYSE both have a six-year time limit, they also contain tolling provisions. Rule 10307(b) of the NASD Code of Arbitration Procedure and Rule 606(b) of the NYSE Arbitration on Code both state that the "six (6) year time limitation upon submission to arbitration shall not apply when the parties have submitted the dispute, claim or controversy to a court of competent jurisdiction. The six (6) year time limitation shall not run for such period as the court shall retain jurisdiction upon the matter submitted."[3] Accordingly, Plaintiffs' arbitrable claims are not time-barred

under the governing rules of NASD or NYSE.

■ Plaintiffs' second argument concerning prejudice based upon Defendant's invoking the judicial process to their detriment, on its face, tends to support Eleventh Circuit case law finding prejudice. The *Stone* court found that the use of pretrial procedures "may sufficiently prejudice the legal position of an opposing party" to constitute waiver. *Stone*, 898 F.2d at 1543; *see also Morewitz*, 62 F.3d at 1366 ("Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate.").

However, there is a stark distinction between the cases Plaintiffs proffer concerning waiver and the instant lawsuit. Namely, Plaintiffs in this case have certain state law claims that the parties agreed to arbitrate, as well as federal claims that are beyond the scope of the parties' arbitration agreement. All claims arise out of the same transactions and/or occurrences. Thus, the parties would have engaged in substantially the same pretrial procedures, particularly discovery, irrespective of whether the state law claims were involved in this lawsuit. *See Rush v. Oppenheimer & Co.*, 779 F.2d 885, 888–89 (2nd Cir.1985) (stating that a party may participate in discovery without waiving the right to arbitration where the case has arbitrable and non-arbitrable claims). The parties would be in the same litigation position today with or without the state law claims in-

---

**2.** Judge Kehoe dismissed the entire complaint with prejudice on January 25, 1995. The Eleventh Circuit reversed, stating that "plaintiffs' counsel had difficulty pleading their clients' case adequately. After several dismissals without prejudice, the district court understandably lost patience and dismissed it with prejudice. Nevertheless, our review ...

convinces us that plaintiffs' complaint is sufficient." The case was then remanded and assigned to the undersigned.

**3.** The parties have not addressed whether any other SRO's rules contain a time limitation or a tolling provision.

volved in this litigation. Accordingly, the Court is unable to discern how the pretrial procedures the parties have engaged in prejudices Plaintiffs' legal position.

In total the state law claims are ripe for adjudication by a competent arbitrator. The Court finds that Plaintiffs' state law claims are not time-barred under the rules of NASD and NYSE, and Defendant has not substantially participated in the litigation to the detriment or prejudice of Plaintiffs. *Morewitz*, 62 F.3d at 1366. However, arbitration must proceed before a panel of arbitrators appointed by NASD or NYSE. Defendant may not seek to frustrate Plaintiffs' right to arbitration by invoking another SRO that contains a time limitation without tolling provision.

### CONCLUSION

For the reasons stated above, it is

ADJUDGED that Defendant's Motion for Summary Judgment is GRANTED. .