**In re Darrell D. TAYLOR and Susan K. Taylor, Debtors.**

**Darrell D. Taylor and Susan K. Taylor, Plaintiffs,**

v.

**Green Tree Financial Servicing Corp., a/k/a Conseco Finance, Defendant.**

**Bankruptcy No. 99–4710–3F3. Adversary No. 00–208.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Dec. 11, 2000.

Schuyler S. Smith, Jacksonville, FL, for Defendant Green Tree Financial Servicing Corp.

D. Lamar Smith, Jacksonville, FL, for Plaintiffs.

Mamie L. Davis, Jacksonville, FL, Standing Chapter 13 Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding is before the Court on the Motion for Stay of Action Pending Arbitration filed by Conseco Finance Servicing Corporation ("Defendant") on September 13, 2000. (Adv.Doc. 23.) Darrell D. Taylor and Susan K. Taylor ("Plaintiffs") filed a Response to the Motion for Stay of Action Pending Arbitration on October 4, 2000. (Adv.Doc. 31.) On November 7, 2000, the Court held a hearing on the Motion for Stay of Action Pending Arbitration, at which the Court ordered the parties to submit additional memoranda of law on the issue of jury trial waiver. Plaintiffs filed a Supplemental Brief on November 9, 2000. (Adv.Doc. 34.) Defendant filed a supplemental brief in the form of a letter on November 20, 2000. (Adv. Doc. 35.) Upon review of the evidence and arguments of counsel at the hearing and upon review of submissions, the Court finds that the arbitration clause in Plaintiffs' mortgage agreement with Defendant is valid and enforceable, and therefore finds that Plaintiffs' waiver of their right to a jury trial is valid and enforceable. Further, the court finds that Defendant did not waive its right to compel arbitration. Finally, the Court finds that the arbitration clause in the mortgage agreement applies to the dispute at hand. The Court will stay the adversary proceeding before it pending the outcome of an arbitration.

### FINDINGS OF FACT

On September 30, 1996, Defendant, a corporate lender specializing in manufactured homes, executed a note indicating that it was loaning $19,853.87 to Plaintiffs at 9.9% interest ("the note"). (Ex. A to Pl. Amended Adversary Complaint, Adv. Doc. 4.) The note was executed in Florida. In exchange for this loan, Plaintiffs conveyed a second mortgage in their homestead, a piece of real property and a manufactured home located in St. Johns County, Florida,

to Defendant.[1]

Paragraph 14 of the note contains an arbitration clause:

14. ARBITRATION: All disputes, claims or controversies arising from or related to this Contract or the parties thereto shall be resolved by binding arbitration by one arbitrator selected by you [seller or assignee after assignment] with my [buyer] consent. This agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve their disputes. The parties understand that they have a right to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. The parties voluntarily and knowingly waive any right they have to a jury trial either pursuant to arbitration under this clause or pursuant to a court action (as provided herein). The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this contract. The parties agree that the arbitrator shall have all powers provided by law, the Contract and the agreement of the parties. These powers shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief. Notwithstanding anything hereunto to the contrary, you [Green Tree] retain an option to use judicial (filing a lawsuit) or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this contract, including the filing of a counterclaim in a suit brought by you pursuant to this provision.[2]

Paragraph 23 of the note contains a choice of law provision that provides, in relevant part:

This security agreement is governed by the laws of the jurisdiction in which lender is located, except to the extent otherwise required by the laws of the jurisdiction where the property is located . . .

According to the Proof of Claim filed by Defendant in the main case, Defendant's address is P.O. Box 64382, St. Paul, Minnesota 55164. (Doc. 13.)

On September 1, 1998, Plaintiffs filed for Chapter 13 protection in this court, Case No. 98–7100–3F3.

---

1. The real property is legally described as: Lot 21, River Oaks Plantation Unit One, Replat, according to plat thereof as recorded in Map Book 28, pages 29, 30, 31, 32, 33, 34, 35 and 36 of the public records of St. Johns County, Florida. The address of the property is 1112 Mill Creek Drive, Jacksonville, FL 32259.

2. Neither party entered into evidence a copy of the note including this provision. Nor was there a copy in the record. The Court therefore must accept the only version of the arbitration clause it has—the one provided in Defendant's brief.

On March 1, 1999, Defendant sent Plaintiffs a letter acknowledging their bankruptcy filing and indicating that their account was not in arrears.

On March 1, 1999, the Court dismissed Plaintiffs' first Chapter 13 proceeding for failure to file a joint certification that their plan was ready for confirmation, as required by local rules. (Ex. B to Pl. Amended Adversary Complaint, Adv. Doc. 7.)

On March 29, 1999, Defendant sent Plaintiffs a statement indicating an arrearage of $1,074.06 on their account. (Ex. C to Pl. Amended Adversary Complaint, Adv. Doc. 7.)

Plaintiffs alleged that Defendant continued to manufacture delinquencies on their account by misapplying payments made by Plaintiffs under their first Chapter 13 Plan in violation of several state and federal credit practices statutes.

On May 17, 1999, Defendant initiated foreclosure proceedings against Plaintiffs' homestead in the Seventh Judicial Circuit Court, St. Johns County, Florida, Case no. 99–855–CA. On June 3, 1999, Plaintiffs filed a counterclaim against Defendant alleging that Defendant had illegally misapplied payments made on the note during Plaintiffs' first bankruptcy in order to "manufacture" arrearages and precipitate foreclosure ("the state court counterclaim").

Defendant filed a Motion to Strike Plaintiffs' state court counterclaim. On June 22, 1999, before the state court could dispose of the Motion to Strike or the counterclaim, Plaintiffs filed for Chapter 13 bankruptcy protection in this Court, automatically staying the state court action.

On September 3, 1999, Defendant filed a Proof of Claim for $19,935.51 in Plaintiffs' bankruptcy Case. (Doc. 13.) The Proof of Claim indicated that Plaintiffs were $616.16 in arrears.

On September 9, 1999, a § 341 meeting of creditors was begun and continued. (Doc. 20.) On September 16, 1999, the § 341 meeting concluded. (Doc. 21.) Defendant did not attend either session.

On October 12, 1999, Debtor filed an Amended Chapter 13 Plan with the Court. (Doc. 26). The Amended Plan made no provision for Defendant as a secured party.

On December 1, 1999, Plaintiffs filed an objection to Defendant's claim on the grounds that Defendant had been granted relief from stay pursuant to 11 U.S.C. § 362(b). (Doc. 28.)

In fact, Defendant had not been granted any such relief.

On December 1, 1999, Plaintiffs also filed a Second Amended Chapter 13 Plan. (Doc. 32.) Once again, the Plan made no mention of Defendant's claim. On December 21, 1999, Plaintiffs filed a Third Amended Chapter 13 Plan. (Doc. 37.) The Third Amended Plan failed to mention Defendant's claim.

On January 28, 2000, Defendant filed an objection to confirmation of the Third Amended Chapter 13 Plan. (Doc. 45.)

On January 28, 2000, Defendant also filed an objection to Plaintiffs' objection to Defendant's claim. (Doc. 46.) Defendant argued in its Motion to File Belated Objection to Plaintiffs' objection that it had missed the December 1, 1999 objection to its claim because it was between attorneys at the time. (Doc. 47.)

On March 3, 2000, Plaintiffs filed an Amended Objection to Defendant's claim. (Doc. 55.) The amended objection asserted new grounds for rejecting Defendant's claim—specifically, the grounds asserted

in the state court counterclaim filed in May, 1999, about ten months earlier.

On March 8, 2000, Plaintiffs filed a Fourth Amended Chapter 13 Plan. (Doc. 58.) Once more, Defendant's claim escaped mention.

On March 23, 2000, Defendant filed a notice of objection to the amended objection. (Doc. 59.) Defendant labeled Plaintiffs' objection "frivolous" and requested sanctions pursuant to Rule 11, FED. R. CIV. P.

On March 24, 2000, Plaintiffs filed a Motion for Relief from Stay in order to proceed with the counterclaim in state court. (Doc. 60.) Plaintiffs argued that the Court should abstain from hearing the state court counterclaim in the form of a claim objection as Plaintiffs themselves had requested by objecting to the claim.

On March 27, 2000, the Court abated the Motion for Relief from Stay because Plaintiffs did not timely pay the filing fee. (Doc. 61.)

At a hearing on May 18, 2000, the Court denied confirmation of Plaintiffs' Fourth Amended Chapter 13 Plan, overruled Plaintiffs' objection to Defendant's claim, and denied Plaintiffs' Motion for Relief from Stay. (Doc. 69, Doc. 70, and Doc. 71.) The Court stated in the Order Denying Confirmation that Debtor had not supplied the Court with sufficient financial data, specifically an adequate Schedule I. (Doc. 76.) The Court directed Plaintiffs to account for Defendant's claim in any future plans.

On June 28, 2000, Plaintiffs filed their fifth Amended Chapter 13 Plan, which provided for payments to Defendant. (Doc. 78.) The Fifth Amended Plan provided that any disbursement to Defendant was conditional on the outcome of the counterclaim.

On June 30, 2000, Plaintiffs filed the adversary complaint at hand. (Adv.Doc. 1.) The adversary complaint, incorrectly styled a "counterclaim," essentially repeats the allegations of the state court counterclaim stayed by Plaintiffs' bankruptcy filing about one year earlier. Plaintiffs assert claims for money damages under the Federal Fair Debt Collection Practices Act and its Florida equivalents.

On July 20, 2000, the Court confirmed Plaintiffs' Fifth Amended Chapter 13 Plan over the objections of Defendant and the Chapter 13 Trustee. (Doc. 89.) The confirmation order does not mention the adversary complaint. (Doc. 94.)

On July 20, 2000, Plaintiffs also filed their Amended Schedule I. (Doc. 93.) According to the Amended Schedule I, Plaintiff Darrell D. Taylor works for Corner Stone Mortgage Company of Jacksonville, Florida.

On July 25, 2000, Plaintiffs filed a Motion to Withdraw Reference over the adversary complaint from this Court. (Doc. 10.) The District Court denied this Motion on September 7, 2000. (Doc. 21.)

On September 13, 2000, Defendant filed the motion for Stay of Action Pending Arbitration in the adversary proceeding. (Adv.Doc. 23.)

On October 4, 2000, Plaintiffs responded to the Motion for Stay of Action Pending Arbitration. (Adv.Doc. 31.) Plaintiffs argued exclusively that Defendant waived its right to compel arbitration by waiting fourteen months after the state court counterclaim to file for arbitration.

At the hearing on November 7, 2000, Plaintiffs raised new objections to arbitration, namely that Plaintiffs were entitled to a jury trial under the Seventh Amendment to the United States Constitution and that Plaintiffs' waiver of this right in the note was unconscionable and unenforceable.

The Court requested that the parties provide further submissions on this issue.

## QUESTIONS PRESENTED AND CONTENTIONS OF THE PARTIES

The Court elects to divide the issue at hand into three elements. First, the Court must determine whether or not the arbitration clause and/or the included jury trial waiver are enforceable. If so, then the Court moves on to the next step. The Court must then determine whether or not the arbitration clause remains in force or whether it has been waived. If the clause is still in force, then the Court must finally determine if the parties intended that the arbitration forum be the sole arena in which to resolve a dispute such as this. If the parties so intended, then the bankruptcy action should be stayed pending arbitration of this Proceeding.

**1. Is the waiver of jury trial found in the arbitration clause in the note enforceable?**

The Court must first determine whether or not the jury trial waiver in the arbitration clause at issue is enforceable. Defendant contends that, under Federal case law, the jury trial waiver is not unconscionable. Plaintiffs counter that, under Florida law, the entire arbitration clause is unconscionable.

**2. Is the arbitration clause in force, or has it been waived by Defendant's failure to raise it sooner after the state court counterclaim?**

Plaintiffs argue that Defendant waived the right to compel arbitration by failing to assert the right until fourteen months after the dispute to be arbitrated was raised in the state court counterclaim. Plaintiffs further argue that Defendant waived the right to compel arbitration by failing to raise it during the lengthy battle over Plaintiffs' objection to Defendant's claim and over confirmation. Defendant counters that it never had the opportunity to assert arbitration in state court due to Plaintiffs' bankruptcy filing, which stayed the state court action. Defendant further asserts that its obligation to use arbitration or lose it was not triggered in the bankruptcy case until Plaintiffs filed the adversary complaint.

**3. Did the parties intend at the moment the note was signed for the dispute at hand to be included under the arbitration clause?**

Neither party made any extensive argument on this point. The Court finds that it should inquire into this essential question of contractual interpretation in order to completely dispose of the issues at hand.

## CONCLUSIONS OF LAW

**I. Enforceability of a jury trial waiver and of an arbitration clause**

**A. Combined inquiry into the enforceability of a jury trial waiver and of an arbitration clause**

A plaintiff suing for money damages under the Federal Fair Debt Collection Practices Act is entitled to a trial by jury under the Seventh Amendment to the United States Constitution. *See Sibley v. Fulton DeKalb Collection Service*, 677 F.2d 830, 833 (11th Cir.1982). However, a contracting party may waive this right by agreeing to have any disputes arising from a contract settled in arbitration, rather than through litigation. *See Allied–Bruce Terminix Co., Inc. v. Dobson*, 513 U.S. 265, 280–282, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). In order to encourage the inclusion of arbitration clauses in contracts and to encourage their enforcement by

courts, Congress enacted the Federal Arbitration Act ("FAA") in 1925.[3] *See Id.* at 270, 115 S.Ct. 834. By doing so, Congress created a distinction between the analysis of jury trial waivers standing alone and those jury trial waivers included, either by logical implication or explicitly, in arbitration agreements. In order for a party to show that a jury trial waiver contained in an arbitration agreement violates his Seventh Amendment rights, a party must prove that the arbitration clause itself is unconscionable. *See Stinson v. America's Home Place,* 108 F.Supp.2d 1278, 1286 (M.D.Ala.2000) (quoting *Goodwin v. Ford Motor Credit Co.,* 970 F.Supp. 1007, 1015 (M.D.Ala.1997)).

Therefore, the Court finds that it need only inquire into the enforceability of the arbitration clause and need not conduct a separate inquiry into the enforceability of the jury trial waiver. This conclusion comports with common sense. The essence of an arbitration clause is the avoidance of the expense of litigation. The expenses of litigation are largely derived from the presence of a jury or from the threat thereof. It would eviscerate the purpose of arbitration, and of the FAA, to conclude that an arbitration clause is enforceable yet find that a jury waiver contained therein is not enforceable, thus mandating arbitration by jury. It seems unlikely that any parties entering into contracts containing arbitration clauses intend such an outcome. Nor does such an outcome jive with a commonsense interpretation of the Seventh Amendment. It is unlikely that the framers considered arbitration by jury as satisfying the requirement of "trial by jury," considering the history of jurisprudential hostility toward arbitration.

## B. Applicable law

### i. Federal vs. state law

█ Defendant correctly asserts that Federal law governs basic questions of jury entitlement under the Seventh Amendment. *See Simler v. Conner,* 372 U.S. 221, 221–222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963). However, the question at hand is not whether Plaintiffs are entitled to a jury trial under the Seventh Amendment or whether the action at hand is of the sort traditionally tried by jury. As mentioned above, it is well established that suits for damages under the Federal Fair Debt Collection Practices Act shall be tried by jury if a plaintiff so requests. *See Sibley,* 677 F.2d at 833. The question at hand is whether or not the contract clause waiving jury trial—the arbitration clause—is enforceable.

█ If a party challenges the enforceability of an FAA-qualified arbitration clause on general contract grounds such as fraud, duress, or unconscionability, then state law controls the inquiry. *See Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 116 S.Ct. 1652, 1654, 134 L.Ed.2d 902 (1996) (citing *Perry v. Thomas,* 482 U.S. 483, 492, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). "Thus, generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening [FAA] § 2." *Id.* at 1656.

### ii. Which state law applies?

█ In determining which state's law applies, a bankruptcy court applies the choice-of-law rules of the state in which it sits. *See Hillsborough Holdings Corp. v. Celotex Corp. (In re Hillsborough Hold-*

---

**3.** "The basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate." *Allied–*

*Bruce Terminix,* 513 U.S. at 270, 115 S.Ct. 834.

*ings)*, 166 B.R. 461, 468 (Bankr.M.D.Fla. 1994). Therefore, in determining which state's law applies, the Court will look to the choice of law rules in effect in Florida.

■ In Florida, parties are free to agree upon the law that governs construction of a contract or disputes arising from a contract as long as the transaction embodied in the agreement bears some reasonable relation to the state chosen. *See* FLA. STAT. § 671.105 (2000); *see also Citi–Lease Co. v. Entertainment Family Style, Inc.,* 825 F.2d 1497, 1499 (11th Cir.1987). If a contract is executed in Florida, however, Florida law must be applied where the contract is challenged on grounds of duress, fraud or unconscionability. *See H & R Block of Houston v. Convergent Bus. Sys., Inc.,* 1993 WL 989418, *5 (N.D.Fla. 1993). Of course it is only logical that a choice of law provision under attack as invalid should not control the validity inquiry.

However, in the instant case it is only the arbitration clause under attack as unconscionable. Plaintiffs have not alleged that the "applicable law" paragraph is invalid. Therefore, in accordance with Florida's public policy favoring freedom of contract,[4] the Court will determine the validity of the arbitration clause under the law that the parties agreed would govern any disputes under the contract—the law where the lender, the Defendant, is located.

■ Of course, figuring out exactly what the parties may have intended by the Defendant's "location" involves more metaphysics than geography. Defendant is the typical multi-tentacled corporate beast, with "locations" in several states, most no-

tably Florida, where the contract has the most connections. Additionally, the applicable law paragraph is boilerplate; most likely Plaintiffs never read the clause, although they must be held to it because they have not objected to it. The fact that Plaintiffs probably never read the applicable law paragraph makes hash of any attempt to determine the parties' true intent upon agreeing to that provision. Finally, both parties neglected to offer evidence or argument on this point. Defendant contended that Federal law controlled the instant dispute, apparently without reading the note. Plaintiffs' brief is chock full of Florida case law on unconscionability, indicating that Plaintiffs' counsel likewise overlooked the "applicable law" provision. Thus the Court is left without guidance as to the exact meaning of the term "location."

Therefore, the Court will presume that the parties did not intend for the law of any state where Defendant is physically located to control disputes. Such an interpretation of the agreement would free Defendant to select the most favorable law from among the various states where it operates.[5]

■ The Court shall instead replace the legally inoperative term "location" with the legally unambiguous term "domicile." The Court finds that the determination of "Defendant's domicile" is a choice of law problem, and therefore should be determined under Florida law. *See Citi–Lease,* 825 F.2d at 1499. Under Florida law, a corporation is domiciled where it was originally incorporated. *See*

---

4. Florida courts dub this policy "party autonomy." *See Burroughs Corp. v. Suntogs of Miami, Inc.,* 472 So.2d 1166, 1167 (Fla.1985).

5. The Court suspects that this is the exact reason that Defendant drafted an "applicable law" provision that includes such a practically ambiguous and legally meaningless term such as "located."

*Gay v. Bessemer Properties, Inc.*, 159 Fla. 729, 32 So.2d 587, 591 (1947).

The parties did not offer any evidence as to where Defendant is or was originally incorporated. Therefore, the Court will presume that Defendant is incorporated in Minnesota, where its home office is located according to the Proof of Claim it filed in the main case.

Therefore, the Court now proceeds to determine whether or not the arbitration clause is unconscionable under the laws of Minnesota.

### C. Unconscionability of an FAA-qualified arbitration clause under Minnesota law

### i. Applicability of the Federal Arbitration Act ("FAA")

■ The FAA provides, in relevant part,

[a] written provision in any ... contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2000). Neither party argued that the transaction at issue does not affect interstate commerce. Therefore, the Court finds that the arbitration clause at issue is FAA-qualified and moves on to the unconscionability inquiry.

Once again, the Court notes that the United States Supreme Court has interpreted the phrase "such grounds as exist in law or in equity for the revocation of any contract" to stand for the proposition that state law controls any inquiry into fraud, duress or unconscionability in procuring an arbitration clause. *See Doctor's Associates*, 116 S.Ct. at 1656.

■ However, the Court is obligated to consider the policy behind the FAA in determining whether or not an arbitration clause is unconscionable under governing state law. *See Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). In passing the FAA, Congress evidenced a strong national policy in favor of arbitration, from which flows a broad principle favoring the enforceability of arbitration clauses. *See id.* at 11, 104 S.Ct. 852. Therefore, the Court, in applying Minnesota law of unconscionability, must give great deference to the enforceability of the arbitration clause at hand.

### ii. Unconscionability of arbitration clauses under Minnesota law

■ Under Minnesota law, in the absence of fraud, mistake, duress, coercion, or unconscionable terms, a literate party who signs a contract in ignorance of its contents remains bound by its terms. *See Gartner v. Eikill*, 319 N.W.2d 397, 398 (Minn.1982).

■ A contract is unconscionable under Minnesota law if it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *In re Matter of Hoffbeck*, 415 N.W.2d 447, 449 (Minn.Ct.App.1987) (quoting *Hume v. United States*, 132 U.S. 406, 411, 10 S.Ct. 134, 33 L.Ed. 393 (1889).) Upon finding that a contract was unconscionable at the time it was entered, a court may refuse to enforce the contract, remove the unconscionable clause or limit its application to avoid an unjust result. *See Hoffbeck*, 415 N.W.2d at 449; *see also* MINN. STAT. § 336.2–302(1)(2000). Minnesota courts generally will not find a contract term unconscionable unless it is "inherently objectionable." *See Kauffman Stewart, Inc. v. Weinbrenner Shoe Co.,*

*Inc.*, 589 N.W.2d 499, 503 (Minn.Ct.App. 1999).

 There is nothing inherently objectionable or unfair about an arbitration agreement absent inclusion of some overly broad limitation of statutory actions or remedies. *See Webb v. R. Rowland & Co., Inc.*, 800 F.2d 803, 807 (8th Cir.1986) (determining enforceability of arbitration clause under Minnesota law). In light of Federal policy, an arbitration clause cannot be unconscionable as long as it serves as intended by Congress in enacting the FAA—as a specialized choice-of-forum provision that merely sets a different set of procedures and a different location for a suit without eliminating too many substantive rights. *See Johnson v. Hubbard Broadcasting*, 940 F.Supp. 1447, 1459 (D.Minn.1996) (determining enforceability of arbitration clause under Minnesota law). A court applying Minnesota unconscionability law to an arbitration clause should uphold the clause if it does not force a party to either abandon or relinquish substantive rights under a Federal statute such that the statute's mission would be compromised in the case before the court. *See id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

### iii. Application to the instant case

 The application of the unconscionability standard can be divided into separate but interrelated federal and state law inquiries. The Court will first address the federal policy question: whether or not the arbitration clause serves legitimately, as a forum selection provision, or whether it violates the spirit of the FAA by compromising the purpose of the statute under which Plaintiffs are suing. Second, the Court will look into the Minnesota unconscionability question: whether or not Plaintiffs were under some "delusion" when signing the note.

The Court finds that the arbitration clause in the note is not an unconscionable restriction on the remedial intentions of a federal statute. The arbitration clause in the instant case does not limit Plaintiffs' substantive rights under the Federal Fair Debt Collection Practices Act or any other statute. The arbitration clause does not limit the damages or forms of remedy otherwise available to Plaintiffs in a court of law. The arbitration clause is perfectly neutral as between the rights and responsibilities of the parties. It only functions to transfer the venue of any dispute to arbitration.

The arbitration clause in the note before the Court is exactly the sort of arbitration provision Congress had in mind when enacting the FAA. The clause does not favor either party and does not disturb substantive aspects of the law. Rather, it is purely procedural. Plaintiffs may still obtain from the arbitrator "all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief." The clause provides for the enforcement of any arbitral judgment in a competent court. Plaintiffs substantively surrendered only their right to trial by jury. If the Court were to find that such a waiver made an arbitration clause unconscionable, then all arbitration clauses would be wiped out, obviously undermining Congress' goal in enacting the FAA.

The Court also concludes that Plaintiffs were not under a "delusion" as to the meaning of the arbitration clause when they signed the note. Plaintiff Darrell Taylor works for a mortgage company. Plaintiffs did not present any evidence that they are particularly naïve or uneducated. Plaintiffs presented no evidence that they were bullied into signing the note in its final form.

Therefore, the Court finds that the arbitration clause at issue is not unconscionable. The Court now proceeds to determine whether or not the valid arbitration agreement has been waived by Defendant or whether it remains in force.

## II. Waiver of arbitration clause

### A. Federal law of arbitration waiver

 Waiver of a contractual right to compel arbitration occurs when a party seeking to compel arbitration pursues or participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party. *See Morewitz v. West of England,* 62 F.3d 1356, 1366 (11th Cir. 1995). The prejudice contemplated is the incurring by the opposition of the very sort of litigation expenses arbitration is intended to alleviate. *See id.* The essential waiver test is whether or not, under the totality of the circumstances, the party seeking arbitration has "substantially invoked the litigation machinery." *See S & H Contractors v. A.J. Taft Coal,* 906 F.2d 1507, 1514 (11th Cir.1990).

The Court elects to conceptually divide the waiver inquiry into three steps. First, the Court will examine the docket and determine at what point a party seeking arbitration should have first anticipated that invoking the arbitration right could save both parties a bundle. Second, the Court will look at the period of time between that ideal moment and the moment when the party seeking arbitration actually requested it. Finally, the Court will consider the extensiveness, costliness, and origin of the litigation in that period—how much discovery has been conducted, how many motions filed, and which party filed them. Essentially the Court endeavors to divine whether the docket shows that the party seeking arbitration is sincere about its desire to arbitrate and to save a buck, or whether the amount of litigation undertaken by the party seeking arbitration indicates that the motion to compel arbitration is just another litigation tactic itself.

### B. Application to the instant case

#### i. The "magic moment" to seek arbitration

First, the Court finds that the most opportune point for Defendant to seek arbitration came upon the filing of the adversary complaint on June 30, 2000.

Plaintiffs' contention that Defendant should have raised arbitration upon the filing of the state court counterclaim in June 1999, fourteen months before the filing of the Motion for Stay of Action Pending Arbitration was filed in this Court, is without merit. Almost immediately after the filing of the state court counterclaim, Defendant filed a motion to strike the counterclaim. Before this motion could be disposed of, Plaintiffs stayed the state court action by filing for bankruptcy. Therefore Defendant never had a chance to seek arbitration in the state court action. The filing of the motion to strike evidences Defendant's desire to avoid litigation expenses on the state court counterclaim by cutting it off at the earliest possible moment. A motion for arbitration would have been premature until after denial of a motion to strike. Plaintiffs prevented that event by filing for bankruptcy. Therefore, the "magic moment" to motion for arbitration did not occur before the bankruptcy filing.

Nor would it have be reasonable to expect Defendant to seek arbitration upon the filing of Plaintiffs' Objection to Defendant's claim on December 1, 1999, roughly ten months before the filing of Motion for Stay of Action Pending Arbitration. The claim objection was based on the granting of relief from stay to Defendant. Of

course, Plaintiffs were mistaken—Defendant was never granted such relief. The Court will not place a duty on Defendant to realize this mistake, to predict that true grounds for objection were arbitrable, and to file for stay pending arbitration at this juncture in order to avoid forfeiture of its right to compel arbitration.

Plaintiffs finally revived the allegations of the state court counterclaim in bankruptcy by amending their objection to Defendant's claim on March 3, 2000, just over six months before filing of the Motion for Stay of Action Pending Arbitration. However, there still existed no dispute amenable to more economical disposition by arbitration at this point. Plaintiffs had not yet requested any damages or relief beyond disallowance of the claim. Plaintiff could have filed a bankruptcy counterclaim containing the state court counterclaim grounds rather than a claim objection but failed to do so. Claims litigation is not nearly so costly or extensive as to justify removal to arbitration. Claims litigation is doubtless simpler and cheaper even than full-scale arbitration. In other words, it would not have been reasonable for Defendant at this point to realize that arbitration could save everyone tremendous trouble and expense. The Court refuses to put the onus on Defendant to request arbitration in anticipation of a potential adversary proceeding on the adversary complaint.

Defendant's only offensive litigation maneuver by this time was to lodge an objection to confirmation—again, a relatively simple and cheap way to fight for one's interests in bankruptcy.

On June 30, 2000, Plaintiffs ratcheted up the potential costs of this litigation considerably by filing the adversary complaint and by demanding a jury trial. At that moment, arbitration became the reasonable, economical alternative to litigation. Finally, Defendant was confronted with the possibility of extensive discovery, motion practice, and trial by jury before this Court or the District Court. Finally, arbitration became the avenue any reasonable litigant would pursue to prevent expense. That is the point where the court will begin counting time and holding Defendant responsible for forcing Plaintiffs to incur litigation expense.

### ii. The time gap, and the damage done

Only two and one-half months passed between the filing of the adversary complaint and the filing of the Motion for Stay Pending Arbitration. Two and one-half months is a blink of an eye in federal court jury-trial litigation. Not only was this period short, but it was characterized by unprovoked, offensive litigation maneuvers by Plaintiffs.

Additionally, neither party presented any evidence that any discovery was conducted in this Proceeding during the interval. No depositions were taken. No interrogatories were served. No documents were produced. Not much litigation expense accrued.

The litigation costs incurred by the parties during those two and one-half months were a result of Plaintiffs' tactics, not a result of Defendant's failing to seek arbitration. Plaintiffs filed a Motion to Withdraw Reference. Plaintiffs secured confirmation of the Fifth Amended Plan. Plaintiffs' expenses during this period stemmed from actions they chose to undertake. Was Defendant obligated to stop Plaintiffs before they filed another motion, in order to save them expenses and preserve its right to compel arbitration? Should the Court deprive Defendant of the right to compel arbitration by finding that Defendant should have attempted to stay the case in order to prevent Plaintiffs from going through costly

confirmation litigation that they initiated by filing for Chapter 13? The Court will not mandate that parties who wish to compel arbitration had better do it before the opposition decides to grow litigious.

■ Therefore, the Court finds that Defendant did not waive its right to compel arbitration by waiting until September 13, 2000 to file a Motion for Stay of Action Pending Arbitration.

The Court now proceeds to the final task before it—determining whether or not the arbitration clause that the Court has found valid and in effect covers the instant dispute.

## III. Referability to arbitration

### A. Guiding principle and controlling law

■ The guiding principle behind the referability question is a simple one: the FAA does not require parties to arbitrate when they have not agreed to do so, despite the Congressional policy strongly favoring arbitration of disputes. *See Morewitz*, 62 F.3d at 1363. The existence of an arbitration clause in a contract does not create a presumption that both parties intended all disputes arising out of the contract to be referable to arbitration. *See id.* A court must look first at the plain language of the contract. *See id.* If the language of a contract is ambiguous, then a court may inquire into circumstances surrounding formation in order to determine the parties' true intent. *See id.*

■ If the arbitration clause at issue is FAA-qualified (e.g. has an effect on interstate commerce), then the arbitrability issue is controlled by generally accepted principles of federal contract law. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–405, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). According to the Eleventh Circuit, this entails construing the contract according to its plain language, if possible, or otherwise examining evidence of the parties' intent. *See Morewitz*, 62 F.3d at 1363–1365.

### B. Application to the instant case

■ The Court finds that the plain language of the arbitration clause before it clearly indicates an intent by the parties to the note to submit all disputes arising out of the mortgage transaction to arbitration, including a lawsuit such as this Proceeding. The note plainly states in paragraph 14 that

> [a]ll disputes, claims or controversies arising from or related to this Contract or the parties thereto shall be resolved by binding arbitration ...

The phrasing of the arbitration clause is unambiguous and transparent. The syntax of the arbitration clause is not obfuscatory or opaque. The clause clearly provides that all disputes between the parties will be subject to the arbitration demand of either party, whether arising out of this note or not.

The Court notes that it is likely that Plaintiffs never formed any true intent as to the reach of the arbitration clause. It is likely that Plaintiffs never read the arbitration clause. It is also likely that Defendant never read the arbitration clause— the note is a form contract probably printed by the home office in Minnesota. However, because the language of the arbitration clause is plain and straightforward, such circumstances are irrelevant, even if the parties had presented evidence of such circumstances. Where it exists, plain language controls.

Therefore the Court finds that the parties intended to send all disputes arising from the lender-mortgagor relationship between them, including this Proceeding, to arbitration.

## CONCLUSION

The Court finds that, under Minnesota contract law as influenced by federal policy, the arbitration clause is not unconscionable and is therefore valid and enforceable. The Court next finds that, under Federal law, Defendant did not waive its right to compel arbitration by waiting until two and one-half months after Plaintiffs filed the adversary complaint to file a Motion for Stay of Action Pending Arbitration. Finally, the Court finds that the parties intended to submit all disputes, including this Proceeding, arising out of the lender-mortgagor relationship created by the note to arbitration upon the request of either party. The Court will enter a separate Order staying this Proceeding pending arbitration.